**B.F. GOODRICH COMPANY,**
**Plaintiff–Appellant,**

**v.**

**The UNITED STATES, Defendant–**
**Appellee.**

**No. 95–5064.**

United States Court of Appeals,
Federal Circuit.

Aug. 2, 1996.

Rory D. Lyons, Jones, Day, Reavis & Pogue, Atlanta, Georgia, argued, for plaintiff-appellant. With him on the brief were David E. Miller, Washington, DC, and Carl M. Jenks, Cleveland, Ohio.

Stuart J. Bassin, Attorney, Tax Division, Department of Justice, Washington, DC, argued, for defendant-appellee. With him on the brief were Loretta C. Argrett, Assistant Attorney General, Gary R. Allen, Chief, Appellate Section, and David I. Pincus, Attorney.

Before MICHEL, Circuit Judge, NIES, Senior Circuit Judge, and LOURIE, Circuit Judge.

NIES, Senior Circuit Judge.

B.F. Goodrich appeals the judgment of the United States Court of Federal Claims denying its claims for a tax refund. The court granted the government's motion for summary judgment, concluding that Goodrich was not entitled to take additional depreciation deductions on property that qualified for an investment tax credit. The court also rejected Goodrich's alternative contention that it was entitled to deductions under 26 U.S.C. § 196, which provides for a deduction for unused business credits, such as investment tax credits. We *affirm.*

## I.

### Background

Prior to amendment in 1986, the tax code provided for an "investment tax credit" designed to encourage investment in certain long-lived assets by providing to the investing taxpayer a one-time tax credit of 10 percent of the cost of the property. 26 U.S.C. § 46.[1] Use of the credit, however, was not automatic. For example, if a taxpayer had a net operating loss, there would be no tax liability, and the credit could not be utilized. 26 U.S.C. § 38(c). Such a credit was not necessarily lost but could be either "carried back" up to three years, or "carried forward" up to fifteen (15) years to reduce tax liabilities in those years. 26 U.S.C. § 39(a).

In addition to investment tax credits, the tax code provided for depreciation deductions through which a property owner could deduct the cost of the property over a number of years. Through the combined use of investment tax credits and depreciation deductions, a taxpayer could actually claim excess tax benefits. For example, a taxpayer could realize tax benefits of $2200 for an asset costing only $2000 by (1) claiming an invest-

1. Relevant portions of the Code can be found in the Appendix.

ment tax credit of $200 (10 percent of the cost) and (2) deducting, through depreciation deductions, the full cost of the asset in yearly installments over the life of the asset.

This scheme of investment tax credits and depreciation deductions persisted until 1982, when Congress passed the Tax Equity and Fiscal Responsibility Act (TEFRA), Pub.L. No. 97–248, 96 Stat. 324 (1982). TEFRA added to the Code a new provision, 26 U.S.C. § 48(q), which provided for an adjustment to the property's "basis," the value of the property used in determining depreciation deductions. As enacted, that provision recited:

(q) Basis adjustment to section 38 property.—

(1) In general.—For purposes of this subtitle, if a credit is determined under section 46(a) with respect to section 38 property, the basis of such property shall be reduced by 50–percent of the amount of the credit so determined.

After enactment of TEFRA, an investment tax credit operated to reduce a property's depreciable basis and, therefore, the amount of any depreciation deduction. In the example above, after TEFRA, the property's basis would be reduced by $100 to $1900 ($2000 less 50 percent of the $200 tax credit.) Depreciation deductions then would be computed from an adjusted basis of $1900. Thus, TEFRA operated to curtail the extent to which a taxpayer could realize tax benefits.

The tax credit, as intended, encouraged investment and was successful beyond expectations. Indeed, Congress determined that the program was so successful that it resulted in distorted investment activity—tax-favored sectors received too much investment, while tax-disadvantaged sectors saw too little investment. S.REP. No. 313, 99th Cong., 2d Sess. 96 (1986). In light of the disparate economic effects of the investment tax credit, in 1986 Congress enacted tax reforms de-

signed to achieve more efficient allocation of resources.[2]

While the 1986 amendments generally repealed the tax credit, 26 U.S.C. § 49(a), an exception remained for "transition property"—property, such as that involved in this case, purchased prior to 1986 but placed into service in 1986 or later. *Id.* at § 49(b)(1). After the amendments, the amount of the investment tax credit for transition property thus depended on when the property owner placed the property into service. Although transition property placed into service in 1986 provided the full 10 percent, *id.* at § 46, transition property placed into service in 1987 provided a credit of 8.25 percent, *id.* at §§ 49(c)(3), (5)(A)[3] and transition property placed into service in 1988 or later provided a tax credit of only 6.5 percent. *Id.* at § 49(c)(1). Similarly, the amendments effected a 35 percent reduction in the amount of unexpired investment tax credits that could be carried forward to 1988 or later. *Id.* at § 49(c)(2). The 1986 amendments also affected depreciation deductions. The amendment to § 48(q) changed the amount of the basis reduction from 50 percent to 100 percent of the investment tax credit. *See id.* at § 49(d)(1)(A).

In 1986 and 1987, Goodrich placed into service certain properties, the values of which were about $55.5 million and $14.4 million, respectively. Since the properties were purchased prior to 1986, the properties were "transition properties" and Goodrich qualified for an investment tax credit. Pursuant to § 49(c), Goodrich claimed a 10 percent investment tax credit (approximately $5.5 million) for the 1986 property and an 8.25 percent credit (about $1.2 million) for the 1987 property. Goodrich, however, had no tax liability against which these credits could be used in either 1986 or 1987. Nevertheless, Goodrich was entitled to carry these credits forward.

---

2. Tax Reform Act of 1986, Pub.L. No. 99–514, 100 Stat. 2085 (1986).

3. Section 49(c)(3) recites a "special rule" for a fiscal tax year beginning before and ending after June 30, 1987, wherein the tax credit is reduced by the "applicable percentage," which is defined in § 49(c)(5)(A). According to § 49(c)(5)(A), the amount of the reduction varies gradually based on the start of the taxpayer's tax year, up to a maximum reduction of 35 percent. For calendar year taxpayers such as Goodrich, the amount of the reduction was only 17.5 percent—from 10 percent to 8.25 percent.

Goodrich also claimed depreciation deductions on its 1986 and 1987 tax returns for the same qualified transition properties. For purposes of determining the amount of the deductions, Goodrich reduced the basis of each property. However, instead of reducing the basis by the full amount of the investment credit (*i.e.*, 10 percent for the 1986 property and 8.25 percent for the 1987 property), Goodrich reduced the basis of both properties by only 6.5 percent, taking into account the 35 percent statutory reduction in the amount of investment tax credits that could be carried-forward to 1988 or later. Accordingly, Goodrich claimed a depreciation deduction of about $7.7 million for 1986, and a deduction of about $13.2 million for 1987.

Concluding that Goodrich should have reduced the basis of both properties by the amount of the claimed investment tax credits, rather than by 6.5 percent, the IRS reduced the amount of the Goodrich's depreciation deductions by $288,285 for 1986 and by $447,133 for 1987. The IRS recalculated Goodrich's tax liability for both years in light of these disallowances, and although Goodrich owed no more taxes for 1986, an additional $7,512 was due for 1987.

Goodrich fully paid the assessed deficiency and timely filed a claim for refund, asserting that the IRS improperly disallowed a portion of the claimed depreciation deductions. The IRS denied Goodrich's claim for refund and Goodrich filed suit in the U.S. Court of Federal Claims. The court granted the government's motion for summary judgment and dismissed Goodrich's complaint. This appeal followed.

## II.

### Depreciable Basis

The question presented is when must a property's basis be reduced to reflect an investment tax credit? For reasons set out more fully below, we agree with the Court of Federal Claims that the basis of qualified transition property must be reduced to reflect an investment tax credit when the credit is determined, not when the credit is ultimately utilized by the taxpayer.

Goodrich advances a "reasonable expectation" test in support of its position that the basis should be reduced when the credit is actually utilized. At the time Goodrich placed the properties in service in 1986 and 1987, Goodrich knew that it would not be able to actually utilize the tax credits (determined to be 10 percent and 8.25 percent, respectively) against its current-year tax liabilities. Goodrich was also aware that the amounts of any tax credits carried forward to a post–1987 tax year would be reduced to 6.5 percent. Accordingly, Goodrich submits that in determining the amounts by which the properties' bases had to be reduced it properly relied on its "reasonable expectation" that its credits, when actually utilized, would be subject to the statutory reduction.

Resolution of the issue presented here turns on the proper construction of several provisions of the Internal Revenue Code. We begin with § 48(q), which states that "if a credit is determined under section 46(a) . . ., the basis of such property shall be reduced by 100–percent of the amount of the credit so determined." That provision is straightforward; if a credit is determined, basis must be reduced by the full amount of that credit. Determination of the amount of the credit is governed by § 46, reproduced below in pertinent part for the reader's convenience (emphasis added):

**Section 46. Amount of Credit.**

(a) AMOUNT OF INVESTMENT CREDIT.— For purposes of section 38, the amount of the investment credit determined under this section for any taxable year shall be an amount equal to the sum of the following percentages of the qualified investment. . . .

(1) the regular percentage,

(2) in the case of energy property, the energy percentage, and

(3) in the case of that portion of the basis of any property which is attributable to qualified rehabilitation expenditures, the rehabilitation percentage.

\*　　\*　　\*　　\*　　.　\*　　\*

(c) QUALIFIED INVESTMENT.—

(1) IN GENERAL.—For purposes of this subpart, the term "qualified investment"

means, with respect to any taxable year, the aggregate of—

(A) the applicable percentage of the basis of each new section 38 property (as defined in section 48(b)), *placed in service by the taxpayer during such taxable year,* plus

(B) the applicable percentage of the cost of each used section 38 property (as defined in section 48(c)(1)) placed in service by the taxpayer during such taxable year.

Thus, the amount of the credit determined for a particular taxable year is the sum of certain percentages of the "qualified investment" which, pursuant to § 46(c), for a particular taxable year consists of property that was placed in service during that taxable year. We agree with the trial court that under § 46, an investment tax credit is determined when the property is placed in service.

■ Since the investment tax credit is determined when the property is placed in service, and the statute mandates a reduction in the basis when the credit is determined, we hold that the basis of transition property must be reduced when the taxpayer placed the property in service. The statute simply leaves no room for consideration of Goodrich's "reasonable expectations," and we are unaware of any authority or rule of statutory construction which would permit us to give effect to Goodrich's "reasonable expectations," in contravention of statutory language. Goodrich's argument that basis should be reduced after the tax credit has been carried-forward to a point in time when the taxpayer can actually utilize the credit must be rejected.

Our analysis of the relevant statutory provisions is consistent with the legislative history. Both parties rely on the following excerpt from the Conference Report in support of their respective positions:

A taxpayer is required to reduce the basis of property that qualifies for transition relief ("transition property") by the full amount of investment credits earned with respect to the transition property (af-

ter application of the phased in 35–percent reduction, described below). . . .

H.R. REP. No. 841, 99th Cong., 2d Sess. II–63 (1986).[4] Goodrich argues that this language evinces a Congressional directive to take into account the 35–percent reduction in determining the amount of basis adjustment, although it does not distinguish between current-year tax credits and carried-forward tax credits. According to Goodrich, this failure to address whether the reduction in the basis is required only if the tax credit can be used in the current-year, or whether the basis must also be reduced if the credit has to be carried forward, argues in favor of its entitlement to a reduced basis adjustment. In the Government's eyes, this excerpt addresses the treatment of current-year tax credits, *i.e.,* the basis must be reduced by the full amount of the tax credit allowed for the year the property is placed in service.

Goodrich's reliance on this excerpt from the legislative history is plausible only if the quoted excerpt is viewed in isolation. However, when this excerpt is viewed in the context of neighboring text (see Appendix), the intended meaning crystallizes. First, while Goodrich is correct that the quoted excerpt does not expressly distinguish between current-year tax credits and carried-forward tax credits, the text headings suggest such a distinction. The quoted excerpt is the first sentence of a paragraph titled "Full basis adjustment." The next subsection is titled "Reduction of ITC carryforwards and credits claimed under transitional rules." The existence of a separate subsection expressly devoted to carryforward credits clearly implies, as the Government argues, that the quoted excerpt—which is part of the preceding section—deals with different subject matter, namely current-year credits. Thus, where transition property is placed in service in 1988, the earned current-year investment credit is the reduced 6.5 percent credit. The amount of the subsequent basis reduction is 6.5 percent or, in the words of the Conference Report, the "full amount of investment credits earned with respect to the transition property *after application of the phased in 35–percent reduction.*"

4. The full text of this portion of the Report can be found in the Appendix.

Lastly, we note that the IRS has arrived at a similar conclusion.[5] In 1987, the IRS promulgated Rev.Rul. 87–113, 1987–2 C.B. 33–35, in which it considered a factual scenario similar to the present case: a taxpayer placed transition property costing $1,000,000 in service in 1986 but could not utilize the credit until 1988 as a carryforward. The Service concluded that although the credit eventually taken by the taxpayer in 1988 was only $65,000 ($100,000 reduced by 35 percent), taxpayer had to reduce its basis in the property by $100,000 in 1986. The Service stated:

> Because the property was placed in service after December 31, 1985, [taxpayer] must reduce its depreciable basis in the property to $900,000 under the 100–percent–of–credit basis reduction rule in section 49(d)(1) of the Code. The basis must be reduced in the year the property is placed in service, in 1986. However, because it is carried forward to 1988, the $100,000 credit is subject to the 35–percent credit reduction under section 49(c)(2). Thus, the credit eventually taken by [taxpayer] in 1988 is $65,000 ($100,000 reduced by 35 percent), even though [taxpayer] reduced its basis in the property by $100,000 in 1986. [Taxpayer] is not allowed to increase its basis in the property to reflect the reduction in the investment credit carryforward under section 49(c)(2).

We have considered Goodrich's other arguments and find them unpersuasive. Comparisons to statutory provisions applicable to narrow, factually-distinct situations (*i.e.*, progress expenditures made during construction projects) are of little help here. Furthermore, the express provision for consideration of "reasonable expectations" in regard to progress expenditures indicates that Congress knows how to adopt such a standard when it so desires. Nor are we convinced by Goodrich's hypotheticals that the alleged inconsistencies between so-called "similarly situated taxpayers" warrant a construction which departs from the language enacted by Congress.

---

**5.** We recognize, however, that IRS Revenue Rulings have no binding effect on this court. *Trainer v. United States,* 800 F.2d 1086, 1090 n. 7

## III.

### *Deductions For Unused Business Credits*

Alternatively, Goodrich seeks, under 26 U.S.C. § 196(a), a deduction equal to the amount its investment tax credits were reduced when the credits were carried forward. Section 196 recites, in pertinent part:

**Section 196. Deduction for certain unused business credits.**

> (a) ALLOWANCE OF DEDUCTION.—If any portion of the qualified business credits determined for any taxable year has not, after application of section 38(c), been allowed to the taxpayer as a credit under section 38 for any taxable year, an amount equal to the credit not so allowed shall be allowed to the taxpayer as a deduction for the first taxable year following the last taxable year for which such credit could, under section 39, have been allowed as a credit.

> \*    \*    \*    \*    \*    \*

> (c) QUALIFIED BUSINESS CREDITS.—For purposes of this section, the term "qualified business credits" means—

>> (1) the investment credit determined under section 46(a) (but only to the extent attributable to property the basis of which is reduced by section 48(q)),

> \*    \*    \*    \*    \*    \*

> (d) SPECIAL RULE FOR INVESTMENT TAX CREDIT.—In the case of the investment credit determined under section 46(a) (other than a credit to which section 48(q)(3) applies), subsection (a) shall be applied by substituting "an amount equal to 50 percent of" for "an amount equal to".

Thus, if a taxpayer is precluded, by reason of the section 38(c) limitation, from utilizing an investment tax credit, § 196 provides for a future deduction equal to 50 percent of the amount of the credit disallowed.

We conclude that Goodrich cannot avail itself of the § 196 deduction. According to

---

(Fed.Cir.1986); *Farmar v. United States,* 689 F.2d 1017, 1024 n. 12 (Ct.Cl.1982).

§ 196(a), the deduction shall be allowed "for the first taxable year following the last taxable year for which the credit could, under § 39, have been allowed." Section 39 specifies a 15–year period during which unused credits may be carried-forward. Thus, the "last taxable year" referred to in § 196(a) is, in the words of § 39, "15 taxable years following the unused credit year." We agree with the Court of Federal Claims that the statute permits a deduction only at the end of the 15–year carry-forward period. The requirement of expiration of the carryforward period is not, as Goodrich argues in its brief, speculation.

## IV.

### Conclusion

For the foregoing reasons the Court of Federal Claims' judgment is affirmed.

## V.

### Costs

Each party to bear its own costs.

*AFFIRMED.*

### APPENDIX

### Internal Revenue Code

### Section 38.   General Business Credit.

(a) ALLOWANCE OF CREDIT.—There shall be allowed as a credit against the tax imposed by this chapter for the taxable year an amount equal to the sum of—

(1) the business credit carryforwards carried to such taxable year,

(2) the amount of the current year business credit, plus

(3) the business credit carrybacks carried to such taxable year.

(b) CURRENT YEAR BUSINESS CREDIT.—For purposes of this subpart, the amount of the current year business credit is the sum of the following credits determined for the taxable year:

(1) the investment credit determined under section 46(a), . . .

(c) LIMITATION BASED ON AMOUNT OF TAX.—

1) In general.—The credit allowed under subsection (a) for any taxable year shall not exceed the excess (if any) of the taxpayer's net income tax over the greater of—

(A) the tentative minimum tax for the taxable year, or

(B) 25 percent of so much of the taxpayer's net regular tax liability as exceeds $25,000.

\*    \*    \*    \*    \*    \*

### Section 39.   Carryback and carryforward of unused credits.

(a) IN GENERAL.—

(1) 3–year carryback and 15–year carryforward.—If the sum of the business credit carryforwards to the taxable year plus the amount of the current year business credit for the taxable year exceeds the amount of the limitation imposed by subsection (c) of section 38 for such taxable year (hereinafter in this section referred to as the "unused credit year"), such excess (to the extent attributable to the amount of the current year business credit) shall be—

(A) a business credit carryback to each of the 3 taxable years preceding the unused credit year, and

(B) a business credit carryforward to each of the 15 taxable years following the unused credit year,

and, subject to the limitations imposed by subsections (b) and (c), shall be taken into account under the provisions of section 38(a) in the manner provided in section 38(a).

\*    \*    \*    \*    \*    \*

### Section 46.   Amount of credit.

(a) AMOUNT OF INVESTMENT CREDIT.—For purposes of section 38, the amount of the investment credit determined under this section for any taxable year shall be an amount equal to the sum of the following percentages of the qualified investment. . . .

(1) the regular percentage, . . .

(b) DETERMINATION OF PERCENTAGES.—For purposes of subsection (a)—

(1) Regular percentage.—The regular percentage is 10 percent.

**Section 49. Termination of Regular Percentage**

(a) GENERAL RULE.—For purposes of determining the amount of the investment tax credit determined under section 46, the regular percentage shall not apply to any property placed in service after December 31, 1985.

(b) EXCEPTIONS.—Subject to the provisions of subsections (c) and (d), subsection (a) shall not apply to the following:

(1) Transition property.—Property which is transition property (within the meaning of subsection (e)).

(c) 35–PERCENT REDUCTION IN CREDIT FOR TAXABLE YEARS AFTER 1986.—

(1) Reduction in current year investment credit.—Any portion of the current year business credit under section 38(b) for any taxable year beginning after June 30, 1987, which is attributable to the regular investment credit shall be reduced by 35 percent.

(2) Unexpired carryforwards to 1st taxable year beginning after June 30, 1987.—Any portion of the business credit carryforward under section 38(a)(1) attributable to the regular investment credit which has not expired as of the close of the taxable year preceding the 1st taxable year of the taxpayer beginning after June 30, 1987, shall be reduced by 35 percent.

(3) Special rule for taxable years beginning before and ending after July 1, 1987.—In the case of any taxable year beginning before and ending after July 1, 1987—

(A) any portion of the current year business credit under section 38(b) for such taxable year, or

(B) any portion of the business credit carryforward under section 38(a)(1) to such year,

which is attributable to the regular investment credit shall be reduced by the applicable percentage.

\*    \*    \*    \*    \*    \*

(5) Definitions and special rules.—For purposes of this subsection—

(A) Applicable percentage.—The term "applicable percentage" means, with respect to a taxable year beginning before and ending after July 1, 1987, the percentage which bears the same ratio to 35 percent as—

(i) the number of month in such taxable year after June 30, 1987, bears to

(ii) the number of months in such taxable year.

\*    \*    \*    \*    \*    \*

(d) FULL BASIS ADJUSTMENT.—

(1) In general.—In the case of periods after December 31, 1985, section 48(q) (relating to basis adjustment to section 38 property) shall be applied with respect to transition property—

(A) by substituting "100 percent" for "50 percent" in paragraph (1), and

(B) without regard to paragraph (4) thereof (relating to election of reduced credit in lieu of basis adjustment).

(e) TRANSITION PROPERTY.—For purposes of this section—

(1) TRANSITION PROPERTY.—The term "transition property" means any property placed in service after December 31, 1985, and to which the amendments made by section 201 of the Tax Reform Act of 1986 do not apply, . . .

**H.R.REP. 841, 99ᵗʰ Cong., 2d Sess. II–63, 64 (1986)**

***Special rules applicable to the regular investment credit***

*Full basis adjustment*

A taxpayer is required to reduce the basis of property that qualifies for transition relief ("transition property") by the full amount of investment credits earned with respect to the transition property (after application of the phased in 35–percent reduction, described below). The full-basis adjustment requirement also applies to credits claimed on qualified progress expenditures made after December 31, 1985. Further, the full-basis adjustment requirement applies to all depreciable property, regardless of whether such property is eligible for ACRS. The lower basis will be

used to compute depreciation deductions, as well as gain or loss on disposition of property.

*Reduction of ITC carryforwards and credits claimed under transitional rules*

These rules apply only to the portion of an investment credit attributable to the regular percentage (other than the portion thereof attributable to qualified timer property). Thus, for example, 100 percent of ITC carryovers may continue to be allowed for funding of an investment tax credit employee stock ownership plan.

Under the conference agreement, the investment tax credit allowable for carryovers is reduced by 35 percent. The reduction in investment tax credit carryovers is phased in with the corporate rate reduction. The 35–percent reduction is fully effective for taxable years beginning on or after July 1, 1987. Taxpayers having a taxable year that straddles July 1, 1987, will be subject to a partial reduction that reflects the reduction for the portion of their year after that date. For example, for a calendar year taxable year, the reduction for 1987 is 17.5 percent. The investment tax credit earned on transition property is reduced in the same manner as carryovers.

The amount by which the credit is reduced will not be allowed as a credit for any other taxable year. For purposes of determining the extent to which an investment credit determined under section 46 is used in a taxable year, the regular investment credit is assumed to e used first. This rule is inapplicable to credits that a taxpayer elects to carryback 15 years under the special rules described below.

As described above, a full basis adjustment is required with respect to the reduced amount of the investment tax credit. Thus, for transition property that is eligible for a 6.5 percent investment tax credit, the basis reduction would be with respect to the 6.5 percent credit, not the unreduced 10 percent credit.

The phased-in 35–percent reduction is to be applied to the investment tax credit before application of the general 75–percent limitation. Further, the amount of investment tax credit carryovers subject to reduction shall be adjusted to reflect credits that were recaptured.