Philip D. FARMAR and Marian J. Farmar, and A. A. and Mary S. Sugg

v.

The UNITED STATES.

Nos. 15–80T, 16–80T.

United States Court of Claims.

Sept. 22, 1982.

Certiorari Granted Jan. 10, 1983.
See 103 S.Ct. 722.

William M. Linden, Houston, Tex., for plaintiffs. James A. Carter, attorney of record. Marvin K. Collie and Vinson & Elkins, Houston, Tex., of counsel.

Maxine C. Champion, Washington, D. C., with whom was Asst. Atty. Gen., John F. Murray, Washington, D. C., for defendant. Theodore D. Peyser, Jr., and Donald H. Olson, Washington, D. C., of counsel.

# 1018

Before COWEN, Senior Judge, DAVIS and NICHOLS, Judges.

ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT

DAVIS, Judge.

Plaintiffs, Philip D. and Marion J. Farmar, and A. A. and Mary S. Sugg, bring these consolidated refund suits to recover deficiencies assessed by the Internal Revenue Service (IRS or Service) for the taxable year 1976. Farmar and Sugg are owners of a mineral estate in lands located in Texas. They leased their ownership interests to two companies interested in oil and gas exploration. As compensation for the agreements they received lease bonuses, payable in several yearly installments; they were also to receive royalties as oil and gas was extracted from the land. The bonuses were payable no matter if oil or gas was ever produced.[1]

In 1976, oil and gas was extracted and royalties were paid to the plaintiffs. They also received bonus payments that year. On their 1976 tax returns, they claimed a 22 percent percentage depletion deduction on both the royalty income and the bonus payments.

The IRS assessed deficiencies in federal income taxes for 1976 based on its disallowance of the percentage depletion deduction on the bonus income.[2] Taxpayers paid these deficiencies and filed claims for refunds. These were denied, leading to the present actions. Both parties have moved for summary judgment, and we agree that the basic facts are not in dispute. On those facts, we hold for the defendant.

1. If the operators abandoned the leases, they could not recover any part of the bonuses.

2. There is no controversy over plaintiffs' right to percentage depletion deductions with respect to the royalties. Nor is there any dispute before us over cost depletion.

3. Section 613A was enacted as part of the Tax Reduction Act of 1975, Pub.L. No. 94-12, § 501, 89 Stat. 26 (1975).

4. The next five segments of subsection (c) state:

## I

For the year before us (1976), the relevant statutory tax provision is § 613A of the Internal Revenue Code, 26 U.S.C. § 613A (1976), which abolishes the percentage depletion allowance for oil and gas wells, restricting oil and gas developers to cost depletion.[3] A limited exception is provided under § 613A(c) for small independent producers and royalty owners. (It is common ground that plaintiffs fall within that category). Subsection (c) provides that:

(c) Exemption for independent producers and royalty owners.—

(1) *In general.*—Except as provided in subsection (d), the allowance for depletion under section 611 shall be computed in accordance with section 613 with respect to—

(A) so much of the taxpayer's average daily production of domestic crude oil as does not exceed the taxpayer's depletable oil quantity; and

(B) so much of the taxpayer's average daily production of domestic natural gas as does not exceed the taxpayer's depletable natural gas quantity;

and the applicable percentage (determined in accordance with the table contained in paragraph (5)) shall be deemed to be specified in subsection (b) of section 613 for purposes of subsection (a) of that section.

26 U.S.C. § 613A(c)(1) (1976).[4] Taxpayers covered by this subsection make their determination of gross income based on the pre-

(2) *Average daily production.*—For purposes of paragraph (1)—
(A) the taxpayer's average daily production of domestic crude oil or natural gas for any taxable year, shall be determined by dividing his aggregate production of domestic crude oil or natural gas, as the case may be, during the taxable year by the number of days in such taxable year, and
(B) in the case of a taxpayer holding a *partial interest in the production from any property (including an interest held in a part-*

1975 rules of § 613, 26 U.S.C. § 613 (1976), and then apply the limitations and restrictions of § 613A for depletion on that income.

Plaintiffs' position is that § 613A retained the pre-existing system of depletion for independent producers and royalty owners, and merely established maximum limits on the amount of oil and gas subject to percentage depletion. They argue that the scheme for determining the amount and timing of depletion allowances on bonus payments, developed in the Supreme Court decisions of *Burnet v. Harmel,* 287 U.S. 103, 53 S.Ct. 74, 77 L.Ed. 199 (1932); *Herring v. Commissioner,* 293 U.S. 322, 55 S.Ct. 179, 79 L.Ed. 389 (1934); and, *Douglas v. Commissioner,* 322 U.S. 275, 64 S.Ct. 988, 88 L.Ed. 1271 (1944), is unchanged by the 1975 law. In their view, the bonus income is still subject to percentage depletion in the year it is received as long as there is oil or gas produced at some point during the life of the lease. (That was undoubtedly the pre-1975 law.) They say that bonus income can be converted to barrels per day (or cubic feet of gas) in the year of actual production,[5] and at that time confined to the quantity limitations prescribed in § 613A. According to the taxpayers, this conversion reconciles § 613A and § 613 so that § 613A establishes only a quantity limitation and not a production precondition to application of the percentage depletion allowance.

The government, on the other hand, insists that under the new statute, (a) depletion must be tied to actual production in the taxable year (here, 1976); (b) lease bonuses (such as those in the current cases) are not depletable at all because they are not connected with actual production; and (c) the pre-1975 law, as interpreted by the Supreme Court, was changed to allow depletion (to independent owners and royalty

---

nership) such taxpayer's production shall be considered to be that amount of such production determined by multiplying the total production of such property by the taxpayer's percentage participation in the revenues from such property.

In applying this paragraph, there shall not be taken into account any production of crude oil or natural gas resulting from secondary or tertiary processes (as defined in regulations prescribed by the Secretary).

(3) *Depletable oil quantity.—*

(A) *In general.—*For purposes of paragraph (1), the taxpayer's depletable oil quantity shall be equal to—

(i) the tentative quantity determined under the table contained in subparagraph (B), reduced (but not below zero) by

(ii) the taxpayer's average daily secondary or tertiary production for the taxable year.

(B) *Phase-out table.—*For purposes of subparagraph (A)—

| In the case of production during the calendar year: | The tentative quantity in barrels is: |
|---|---|
| 1975 | 2,000 |
| 1976 | 1,800 |
| 1977 | 1,600 |
| 1978 | 1,400 |
| 1979 | 1,200 |
| 1980 and thereafter | 1,000 |

(4) *Daily depletable natural gas quantity.* —For purposes of paragraph (1), the depletable natural gas quantity of any taxpayer for any taxable year shall be equal to 6,000 cubic feet multiplied by the number of barrels of the taxpayer's depletable oil quantity to which the taxpayer elects to have this paragraph apply. The taxpayer's depletable oil quantity for any taxable year shall be reduced by the number of barrels with respect to which an election under this paragraph applies. Such election shall be made at such time and in such manner as the Secretary shall by regulations prescribe.

(5) *Applicable percentage.—*For purposes of paragraph (1)—

| In the case of production during the calendar year: | The applicable percentage is: |
|---|---|
| 1975 | 22 |
| 1976 | 22 |
| 1977 | 22 |
| 1978 | 22 |
| 1979 | 22 |
| 1980 | 22 |
| 1981 | 20 |
| 1982 | 18 |
| 1983 | 16 |
| 1984 and thereafter | 15 |

**5.** This conversion is accomplished, under taxpayers' theory, by allocating the bonus payment(s) over the expected productive life of the well and then dividing the price per barrel received on the extracted oil in a particular year into the bonus payment allocated to that year. This gives a barrel per day figure which is added to actual production quantities to determine if the depletable oil or gas quantities established by the statute, 26 U.S.C. § 613A(c)(3), (4) (1976), have been exceeded. Complications arise when production and sale do not occur in the same year but those problems are not present in the cases now before us.

owners) only with respect to payments dependent on actual production in the taxable year.

## II

This difference is not an easy one to resolve, and neither the text of the statute nor its legislative history gives a resounding answer. There is already a judicial dispute over the correct approach. The full Tax Court, with one dissent, has come down on the government's side. *Glass v. Commissioner,* 76 T.C. 949 (1981) (lease bonuses), and *Engle v. Commissioner,* 76 T.C. 915 (1981) (advance royalties). Since we heard oral argument in the present cases, the Seventh Circuit has reversed the Tax Court's *Engle* ruling. *Engle v. Commissioner,* 677 F.2d 594 (7th Cir. 1982). That court held that a percentage depletion allowance is permissible with respect to advance royalties, whether or not actual production occurs in the year the deduction is taken. The court's theory strongly suggests, though the opinion does not hold, that the same rule applies to lease bonuses like those we have here.

In evaluating this troublesome problem for ourselves, we bear in mind some general canons for interpreting federal tax legislation. The traditional postulate is that ambiguities in statutory language should be resolved against the government. *McFeely v. Commissioner,* 296 U.S. 102, 103, 111, 56 S.Ct. 54, 58, 80 L.Ed. 83 (1935); *Gould v. Gould,* 245 U.S. 151, 153, 38 S.Ct. 53, 62 L.Ed. 211 (1917). However, a recognized exception, applicable to the present problem, is that provisions for deductions from income are to be strictly construed and applied in particular cases only if clearly provided for by the statutory language. *Equitable Life Assurance Society v. Commissioner,* 321 U.S. 560, 564–65, 64 S.Ct. 722, 724, 88 L.Ed. 927 (1944); *White v. United States,* 305 U.S. 281, 292, 59 S.Ct. 179, 184, 83 L.Ed. 172 (1938); *Helvering v. Inter-Mountain Life Insurance Co.,* 294 U.S. 686, 689–90, 55 S.Ct. 572, 574–75, 79 L.Ed. 1227 (1935); *Parker Pen Co. v. O'Day,* 234 F.2d 607, 609 (7th Cir. 1956); *cf. A. Craw-*

*ford Greene v. United States,* 145 Ct.Cl. 259, 268, 171 F.Supp. 459, 464, *cert. denied,* 360 U.S. 933, 79 S.Ct. 1451, 3 L.Ed.2d 1545 (1959). Deductions are a matter of legislative grace and a taxpayer has the burden of proving his entitlement to the income reduction. *Interstate Transit Lines v. Commissioner,* 319 U.S. 590, 593, 63 S.Ct. 1279, 1281, 87 L.Ed. 1607 (1943); *Deputy v. Du-Pont,* 308 U.S. 488, 493, 60 S.Ct. 363, 366, 84 L.Ed. 416 (1940); *New Colonial Ice Co. v. Helvering,* 292 U.S. 435, 440, 54 S.Ct. 788, 790, 78 L.Ed. 1348 (1934); *cf. United States v. Stewart,* 311 U.S. 60, 71, 61 S.Ct. 102, 109, 85 L.Ed. 40 (1940). More specifically for these cases, a taxpayer attempting to deduct a depletion allowance must establish that it is clearly allowed by legislation. *Parsons v. Smith,* 359 U.S. 215, 219, 79 S.Ct. 656, 660, 3 L.Ed.2d 747 (1959); *Commissioner v. Southwest Exploration Co.,* 350 U.S. 308, 312, 76 S.Ct. 395, 397, 100 L.Ed. 837 (1956); *Reinecke v. Spalding,* 280 U.S. 227, 232–33, 50 S.Ct. 96, 97–98, 74 L.Ed. 385 (1930); *South Jersey Sand Co. v. Commissioner,* 267 F.2d 591, 593 (3d Cir. 1959); *Jefferson & Clearfield Coal & Iron Co. v. United States,* 83 Ct.Cl. 491, 494, 14 F.Supp. 918, 920, *cert. denied,* 299 U.S. 581, 57 S.Ct. 46, 81 L.Ed. 428 (1936). Ambiguities should be resolved against the taxpayer. *Consolidated Chollar Gould & Savage Min. Co. v. Commissioner,* 133 F.2d 440, 441 (9th Cir. 1943).

## III

Though their meaning is not absolutely plain, the words of § 613A(c) suggest to us that Congress restricted percentage depletion to income derived from actual production during the taxable year, and did not merely establish a top limitation on the quantities of oil and gas subject to that kind of depletion.

It is clear, in the first place, that § 613A controls the allowance for percentage depletion (which is now limited to independent producers and royalty owners). Subsection (a) of § 613A provides (as its "general rule") that "Except as otherwise provided *in this section* [*i.e.,* § 613A], the allowance

for depletion under section 611 *with respect to any oil or gas well* shall be computed *without* regard to section 613." [emphasis added] The question, then, is the method of calculation mandated by § 613A—not the method used when § 613 stood alone.

In turn, subsection (c) of § 613A (see Part I and footnote 4, *supra* ), requires that the percentage oil and gas depletion allowance be computed "with respect to" "the taxpayer's average daily production" of domestic crude oil or natural gas. 26 U.S.C. § 613A(c)(1) (1976). The allowable depletable quantities are then defined in terms of production levels and the applicable depletion percentage rate and allowance is based on production during the particular taxable year. 26 U.S.C. § 613A(c)(2), (3), (4), (5) (1976).[6] The sheer fact is that, throughout § 613A(c) and (d), Congress repeatedly refers to "production" of oil and gas, and frequently refers to said "production" for or during the "taxable year," in a way appearing to suggest that actual extraction was in mind.

This statutory language regularly linking depletion directly to production during a taxable year indicates to us that Congress wanted depletion to be allowable only "with respect to" income derived from, or connected with, actual extraction during the taxable year. "Production" normally means physical extraction—in the oil and gas industry as well as in common usage. Conversely, the text of § 613A is not framed so as to suggest that the depletable quantities are merely maximum limitations on the allowance of a depletion deduction, unrelated (or minimally related) to actual production.[7] The actual language embodies no such connotation.

■ Both the present taxpayers and the Seventh Circuit in *Engle, supra,* have stressed that this reading represents a sharp departure from the prior law, under which depletion was allowed on lease bonuses, provided that some amount of production occurred under the lease. *See Burnet v. Harmel, Herring v. Commissioner,* and *Douglas v. Commissioner,* all *supra.* That is true, but not controlling. If the words of later legislation fit better with such a departure than they do with retention of prior law, new language should be accepted as written (if, as we show in Part IV, *infra,* is the case here, the legislative history does not indicate otherwise). "If the section as amended is inconsistent with prior judicial interpretation of related sections, it is presumed that the legislature knew thereof, and the amendment controls." *C. Sands, Sutherland Statutory Construction,* § 22.5 at 197 (4th ed. 1972).

In the light of the specific wording of § 613A with its stress on what seems to be actual production during the taxable year, it is hard for us to believe that in these cases—involving lease bonuses which were expressly payable regardless of whether oil or gas was ever produced while the lease was in effect—Congress wished percentage depletion to be fully allowed each year on those bonuses (up to the stated limits) so long as a minimal amount of oil was extracted at sometime during the lease period. That may have been the case under the previous statute (*see Douglas v. Commissioner, supra,* 322 U.S. at 285, 64 S.Ct. at 994 (1944)), but on its face § 613A strikes us as quite inconsistent with that rule.

Plaintiffs contend, nevertheless, that lease bonuses are sufficiently tied to production because of their economic relation-

---

**6.** Subsection (c)(2) deals with "the taxpayer's average daily production of domestic crude oil or natural gas *for any taxable year * * *.*" [emphasis added] Production "for the [or any] taxable year" is likewise mentioned in subsection (c)(3)(ii) and subsection (c)(4). Subsection (c)(5) deals with "production during [specified] calendar year[s]." Other of the remaining provisions of subsection (c) also refer to "production" or "average daily * * * production" "for any taxable year" (subsections (c)(6), (c)(7),

(c)(9), (c)(10), and (c)(12)). Subsection (d) (limiting the amount of the depletion allowance) likewise refers to "production."

**7.** The statute does not provide, for example, for plaintiffs' method of converting bonus income into barrels of oil; rather, the limitation on depletable quantities is phrased in terms of barrels of oil production (or cubic feet of natural gas), and not as an income limit.

ship to royalties. Payment for an oil and gas lease is usually composed of a bonus and royalties. We are told that the value of the lease is determined by the expectation of a certain amount of production and that this expectation determines the price of the lease. The price is then divided (it is said) between a bonus portion and a royalty portion. The two parts of the total payment are said to be interconnected so that as one increases the other is decreased while the price remains the same, always based on the buyer's expectation of production levels.

The fundamental flaw in this analysis (assuming that plaintiffs are correct about the process of assessing the value of a lease and the division of the payment) is that the lease bonus is not tied to *actual production* but only to the parties' expectations of production. But the statutory language in § 613A infers a connection with actual, not expected, production. The lease bonus, while it may affect the predetermined royalty payment rates, is not adjusted with or sufficiently connected to actual production levels. On the contrary, it is payable here no matter what the actual production turns out to be, and even if there is no actual production. Moreover, the bonuses in these cases were per acre payments (*i.e.,* based on a land unit), not calculated per barrel produced (actual or anticipated).

Nor do we consider it a telling defect in the government's (and our) understanding of § 613A that Congress retained the old § 613 (which, standing alone, allowed percentage depletion of lease bonuses—see *supra*) in the computation of such depletion for independent operators and royalty owners. We agree with defendant that § 613A simply added a further screen for the percentage depletion deductions of those taxpayers. They first have to show, under § 613, that they seek depletion with respect to gross income from oil property and that the allowance does not exceed the statutory

percentage of their taxable income from the property. Then, the taxpayers must pass through the additional, finer screen of § 613A—showing that the depletion is based on actual production not exceeding the barrel limits imposed by the new statute. Both provisions (§ 613 and § 613A) play their separate roles, but in conjunction with each other. There is no contradiction.

This may very well have been an inartistic or awkward way in which to frame the new legislation, but courts have no right to demand legislative perfection, or even high marks in drafting—if we can ascertain the congressional purpose.[8] For us to read subsection (c) merely as imposing a top limitation, without regard to the amount of actual production, is to degrade the specific words Congress consistently used when it added § 613A to the law.

### IV

A. The legislative history of § 613A is at best of minor help, but at the least we are convinced that it does not contain anything contravening the reading we (as well as the Tax Court and the government) have given to the statute.

In 1975, both Houses of Congress began consideration of a bill to reduce taxes. H.R. 2166, 94th Cong., 1st Sess. (1975). As reported, the bills did not touch on oil and gas depletion. On the floor of each House, after the bill was reported out by the respective committees, there were introduced amendments affecting the percentage depletion allowance as applied to oil and gas wells. The House version repealed the deduction altogether.[9] 121 Cong.Rec. 4638, 4651 (1975). The Senate version likewise provided for immediate repeal of percentage depletion but included an exemption for limited quantities (2,000 barrels per day and a natural gas equivalent) of oil and gas. 121 Cong.Rec. 7770–73, 7807, 7813 (1975).

---

8. We note that this provision was basically inserted on the floor, without much time or opportunity for careful formulation in committee, or rebuilding from the ground up.

9. A version of the amendment that retained percentage depletion for income from small quantities of oil and gas (3,000 barrels of oil or 8,000,000 cubic feet of natural gas) was narrowly defeated on the House floor on the same day. 121 Cong.Rec. 4639–41, 4645 (1975).

The conference committee adopted the Senate approach, adding an eventual complete phase-out of the allowance. H.Conf.Rep. No.120, 94th Cong., 1st Sess. 68 *reprinted in* [1975] U.S.Code Cong. & Ad.News 54, 132–34. This language was enacted as § 613A.

There was no floor discussion (nor statement in the conference report) directly on the problem before us, one way or the other. We stress, however, that nothing said in the debate or report was inconsistent with the requirement that depletion cannot be had on lease bonus payments. Certainly, reading § 613A(c) as confining percentage depletion to income received from actual production does not conflict with what appears to have been one of the purposes of the oil-and-gas depletion portions of the 1975 tax act—the encouragement of actual and immediate production of those commodities. *See* Comment, *Tax Law and the Energy Crisis,* 64 Cal.Law Rev. 1040, 1061–63 (1976).

B. The only reference to the precise issue before us occurred in the immediately preceding Congress. In 1974, a bill was introduced in the House to eliminate the depletion allowance on income earned from oil and gas wells. H.R.17488, 93d Cong., 2d Sess. (1974). It included an exemption for small interest holders and allowed the deduction "with respect to so much of his average daily production of domestic crude oil as does not exceed 3,000 barrels." [10] Concerning this tie to actual production, the House Committee on Ways and Means (reporting the bill) explained:

> The small production exemption applies to gross income attributable to a proportion of *actual* production . . . Thus, the 15 percent rate applies only to gross in-

come attributable to oil which is sold or removed from the premises and not to other types of depletable income. *For example, a lease bonus paid to the lessor of mineral lands in a lump sum or in installments is independent of any actual production from the lease and thus would not be within any of the exemptions.* [emphasis added]

H.Rep.No.1502, 93d Cong., 2d Sess. 46 (1974). The bill was introduced late in the congressional session and was never acted upon by the full House or introduced in the Senate.

In *Engle,* the Seventh Circuit gave no credit whatever to this committee statement because it related to an earlier bill in an earlier Congress, and there is no indication that the later Congress (particularly the Senate) knew of or considered those views. We do not lean heavily on the earlier report, but we do not disregard it entirely (as the Seventh Circuit did). The prior bill was very similar to § 613A (though different in limits and percentages). There are, too, references in both the House and Senate debates in 1975 to the small producer exemption in the 1974 bill.[11] 121 Cong. Rec. 4646, 6903, 7777 (1975). These observations are entitled to some consideration (as indicating some knowledge of the earlier bill) because this section of the statute was initially adopted as a floor amendment (after completion of the House and Senate committee reports) and there was extensive debate on the oil depletion allowance part of that bill. *See* 121 Cong.Rec. 4622–52, 6903–05, 7218–29, 7238–48, 7263–7308, 7772–7813, 8128–29, 8860, (1975); *Depletion Allowance, Hearing Before the Subcomm. on Energy of the Senate Comm. on Finance,* 94th Cong., 1st Sess. (1975).

---

**10.** H.R. 17488, § 112(a):

(b) *3,000 Barrel-A-Day Exemption.—*

(1) *In general.*—If the taxpayer elects the application of this subsection for the taxable year, then with respect to so much of his average daily production of domestic crude oil as does not exceed 3,000 barrels, the percentage referred to in section 613(a) shall be 15 percent in the case of gross income from the property before January 1, 1979.

(2) *Average daily production.*—For purposes of paragraph (1), the taxpayer's aver-

age daily production of domestic crude oil shall be determined by dividing his aggregate production of domestic crude oil during the taxable year by the number of days in such taxable year.

**11.** These comments do not refer to the production-link requirement but they do indicate an awareness, by at least some of the members involved in the floor discussion, of the 1974 bill and the exemption for small producers it contained.

Because the House bill in the 1975 Congress originally included total repeal of the oil depletion allowance, plaintiffs contend that the House could not have intended to follow the 1974 House Committee on Ways and Means bill; and therefore the prior statement should be wholly by-passed. But the 1975 House version entirely repealing the allowance was not ultimately adopted and it cannot represent the intent of the House with respect to § 613A. The conference committee substitute, which contained exemption language very similar to that in the prior H.R.17488, was eventually adopted by both Houses and is a better indication of congressional purpose. *See Gemsco, Inc. v. Walling,* 324 U.S. 244, 246 n.4, 264 n.31, 32, 65 S.Ct. 605, 608 n.4, 616 n.31, 32, 89 L.Ed. 921 and accompanying text (1945). Moreover, even during the initial House discussions, an exemption for independent producers and royalty owners, based on production levels, was considered and narrowly voted down. *See* footnote 9, *supra.* The idea of a special exemption for small entities, expressly involving production, was very much in the air in the 94th Congress, and it is not unlikely that the prior report was known to several, if not many, of the members who considered § 613A.

On the whole we cannot completely disregard the 1974 committee report as having no bearing on the 94th Congress' consideration and passing of § 613A. It is the only significant reference to the issue before us, and clearly supports the government's position. In the absence of any real contradictory history, that report should have some (though, of course, not compelling) weight.

C. We do not consider this item of history overborne by the failure of Congress to address directly the Supreme Court decisions which would be superseded by our reading of § 613A. The 1974 Committee report did not do so and it is expecting too much to look for such discussion in a later floor debate devoted entirely to other aspects of oil depletion. The important point is whether the terms of the new statute are inconsistent with those earlier decisions. If they appear to be so—and we think that they do—there is no requirement that Congress say so explicitly. *See* Part III, *supra.*

V

■■ The Service has consistently interpreted § 613A contrary to plaintiffs' view, and while it is not at all binding we should not overturn that position unless we find it contrary to the statute—as we have not done. In its revenue rulings, the IRS has held that income attributable to a lease bonus is not subject to the percentage depletion allowance. Rev. Rul. 81–44; Rev. Rul. 81–266.[12]

Plaintiffs say that Rev. Rul. 81–266, *supra,* establishes that a lease bonus is subject to a percentage depletion allowance—that, by holding that the lessee must subtract the bonus from its gross income calculation thereby excluding the lessee from taking the deduction, the Service must be endorsing depletion of that income by the lessor.

---

**12.** Revenue rulings are not binding on this court. *Pacific Far East Line, Inc. v. United States,* 211 Ct.Cl. 71, 93, 544 F.2d 478, 490 (1976); *State Bank of Albany v. United States,* 209 Ct.Cl. 13, 19, 530 F.2d 1379, 1382 (1976); *Stubbs, Overbeck & Associates, Inc. v. United States,* 445 F.2d 1142, 1146–47 (5th Cir. 1971) (J. Skelton). They are not accorded a presumption of correctness but must be analyzed for consistency with the statute. *Estate of Sanford v. Connecticut,* 308 U.S. 39, 52–54, 60 S.Ct. 51, 59–60, 84 L.Ed. 20 (1939); *United States v. Missouri Pacific Railroad Co.,* 278 U.S. 269, 280, 49 S.Ct. 133, 137, 73 L.Ed. 322 (1929); *United States v. Eddy Bros.,* 291 F.2d 529, 531 (8th Cir. 1961); *Investment Annuity, Inc. v. Blumenthal,* 442 F.Supp. 681, 687–94 (D.C.Cir.1977) *rev'd on other grounds,* 609 F.2d 1 (D.C.Cir.1979), *cert. denied,* 446 U.S. 981, 100 S.Ct. 2961, 64 L.Ed.2d 837 (1980). Nevertheless, they are entitled to some consideration and carry some weight, especially when the statutory language is considered ambiguous. *Gino v. Commissioner,* 538 F.2d 833, 835 (9th Cir.), *cert. denied,* 429 U.S. 979, 97 S.Ct. 490, 50 L.Ed.2d 587 (1976); *Eddy Bros.,* 291 F.2d at 531; *Farmers Cooperative Co. v. Birmingham,* 86 F.Supp. 201, 228–29 (N.D.Iowa 1949). This stance is consistent with the general deference accorded an IRS interpretation, as well as the Commissioner's authority to choose between reasonable interpretations. *National Muffler Dealers Assn. v. United States,* 440 U.S. 472, 477, 488, 99 S.Ct. 1304, 1307, 1312, 59 L.Ed.2d 519 (1979); *United States v. Correll,* 389 U.S. 299, 307, 88 S.Ct. 445, 449, 19 L.Ed.2d 537 (1967); *Allen Oil Co. v. Commissioner,* 614 F.2d 336, 340 (2d Cir. 1980).

Under the bonus exhaustion rule, taxpayers argue, the deduction may be taken by either the lessor or the lessee, but not both, and removing it from the lessee simply shifts the depletion allowance to the lessor (or vice versa). This is, however, an incorrect reading of the revenue ruling. Rev. Rul. 81–266 expressly upholds the conclusion in Rev. Rul. 81–44 excluding bonus income from percentage depletion. It also points out that under § 613A the lessee cannot deplete bonus income but must subtract it from its gross income under § 613. Neither lessor nor lessee can obtain percentage depletion.

In addition to the revenue rulings, the administrative position is bolstered by the regulation proposed by the Service to implement § 613A(c) which emphatically excludes percentage depletion on lease bonus payments.[13] Proposed regulations are not binding but have some authority as an indication of administrative practice. *See Farmers Cooperative Co. v. Birmingham*, 86 F.Supp. 201, 229 (N.D.Iowa 1949).

## VI

Primarily on the basis of the language of § 613A, but with minor help from the legislative history and the consistent administrative interpretation, we conclude that plaintiffs have not met the burden of showing that they are entitled to a deduction under § 613A—they have not convinced us that the statute omits the requirement of a direct link to actual production for oil and gas income to be subject to the percentage depletion allowance. Our overall views do vary from those expressed by the *Engle* case, but the ultimate holdings of the two sets of cases may not necessarily be inconsistent. We are concerned here with lease bonuses, not tied at all to actual production, and we confine our decision to that subject. The Seventh Circuit dealt with advance royalties which may possibly be considered somewhat different, and more closely related to actual production.[14]

For these reasons, we grant defendant's motion for summary judgment and deny plaintiffs' motion. The petitions are dismissed.

---

**13.** Proposed Treasury Regulation 1.613A:

§ 1.613A–3 *Exemption for independent producers and royalty owners.*

\* \* \* \* \* \*

(4) The provisions of this paragraph may be illustrated by the following examples:

\* \* \* \* \* \*

Example (5). In 1975, E leased an oil property to F, receiving a lease bonus. With respect to the lease bonus, E is entitled to take cost depletion but not percentage depletion.

\* \* \* \* \* \*

§ 1.613A–7 *Definitions.*

\* \* \* \* \* \*

(f) *Average daily production.* (1) The term "average daily production" means the taxpayer's aggregate production of domestic crude oil or natural gas, as the case may be, which is produced after December 31, 1974, and to which gross income from the property is attributable during the taxable year divided by the number of days in such year. \* \* \* Notwithstanding the provisions of § 1.612–3, of this chapter, in computing the average daily production for a taxable year only oil or gas which has been produced by the close of such taxable year shall be taken into account. For example, advanced royalties (to the extent that actual production during the taxable year is insufficient to earn such royalties) and lease bonuses, while taken into account for purposes of sections 61 and 612 (relating to the definition of gross income and cost depletion, respectively), would not be taken into account in computing the percentage depletion allowance pursuant to section 613A(c). \* \* \*

**14.** *Engle* focused on the question whether the depletion deduction and actual production must be in the same year.