The MAY DEPARTMENT STORES
COMPANY AND SUBSIDIARIES,
Plaintiff,

v.

The UNITED STATES, Defendant.

No. 94–340T.

United States Court of Federal Claims.

Nov. 4, 1996.

Christopher Kliefoth, Washington, D.C., for plaintiff.

Michael F. Cox, Washington, D.C., with whom were Assistant Attorney General Loretta C. Argrett and Mildred L. Seidman, for defendant.

## OPINION

LYDON, Senior Judge:

In this tax refund action plaintiff, The May Department Stores Company and Subsidiaries (May), seeks a refund of interest assessed and collected by the Internal Revenue Service (IRS) as the result of an alleged improper calculation of interest on deficiencies created by the use of overpayment credits. The question for the court is the propriety of the government assessing interest on monies for a period during which the government unquestionably had the use of those monies. This action is before the court on the parties' cross-motions for summary judgment and after oral argument. For the reasons set forth below, plaintiff's motion for summary judgment is granted and defendant's cross-motion is denied.

## FACTS

Plaintiff is a corporation that files a consolidated federal income tax return for itself and its subsidiaries. For tax years 1983 and 1984, the IRS determined that deficiencies were due for both years. The parties have resolved these deficiencies and the only issue here is the interest assessed with respect to those deficiencies. The parties have stipulated to the following facts regarding the 1983 and 1984 tax years.

### 1. The 1983 Tax Year

May's 1983 fiscal tax year ended January 28, 1984. On April 11, 1984, May timely filed a Form 7004 with the IRS extending the due date for filing of its federal income tax return from April 15, 1984 to October 15, 1984. May estimated its 1983 tax liability at $111,-000,000 and timely paid that amount by April

17, 1984.[1] On October 15, 1984, May filed its 1983 tax return showing a liability of $103,090,774, and hence an overpayment of $7,909,226. May elected to credit the overpayment to its tax liability for the 1984 tax year but did not attach a statement to its 1983 return specifying to which installment of estimated tax the IRS should credit the overpayment. The IRS credited the overpayment to May's first installment of estimated tax for the 1984 tax year. On May's Form 2220 (Underpayment of Estimated Tax by Corporation) for the 1983 tax year, filed one year later, May indicated that it had applied the $7,909,226 as a credit against its first installment of estimated tax.

The IRS later examined May's 1983 tax return and determined that May's actual liability was $108,018,931, not the $103,090,774 May originally reported. Accordingly, May's payments of $111,000,000 exceeded its actual tax liability by only $2,981,069, not $7,909,226. May's application of its purported 1983 tax refund, claimed when it filed its 1983 tax return on October 15, 1984 to its 1984 tax liability in the amount of $7,909,226 thus resulted in a reduction in its refund claim in the amount of $4,928,157 which the IRS treated as a deficiency in May's 1983 tax return.

By notice dated August 28, 1990, the IRS assessed $4,690,761 in interest on that deficiency, calculating the interest from May 15, 1984, the due date of May's first estimated tax payment for 1984. May paid the total assessed tax and interest, which the IRS credited in full to May's 1983 tax account. Plaintiff contends that the deficiency subject to interest arose when it credited its purported refund claim of $7,909,226 to its estimated tax for the 1984 tax year and has paid interest as due on the $4,928,157 from October 15, 1984 until the deficiency was paid in full. On January 10, 1992, May filed a Form 843 claiming a refund of $432,250.47 for the interest assessed for the period May 15, 1984 to October 15, 1984. May attached to its claim for refund an amended 1983 federal tax return indicating May's election to apply the 1983 overpayment to its 1984 liability, and on the amended return specifically elected to credit the overpayment to May's third 1984 estimated tax payment due October 15, 1984. The IRS disallowed May's refund claim on June 8, 1992.

## 2. The 1984 Tax Year

May's 1984 tax year ended on February 2, 1985. On April 12, 1985, May filed a Form 7004 with the IRS extending the filing date for its 1984 tax return from April 15, 1985 to October 15, 1985. May estimated its 1984 tax liability at $142,000,000 and paid that amount by April 15, 1985.[2] On October 15,

1. May timely paid its 1983 estimated taxes in installments and the IRS credited May's 1983 income tax account as follows:

| | | |
|---|---|---|
| May 17, 1983 | Estimated Tax Payment | $ 11,000,000 |
| July 19, 1983 | Estimated Tax Payment | 11,000,000 |
| October 14, 1983 | 1982 Tax Return Overpayment applied to 1983 Year | 5,635,845 |
| October 17, 1983 | Estimated Tax Payment | 11,364,155 |
| January 18, 1984 | Estimated Tax Payment | 19,000,000 |
| April 17, 1984 | Estimated Tax Payment | 53,000,000 |
| | TOTAL | $111,000,000 |

2. May timely paid its 1984 estimated taxes in installments and the IRS credited May's 1984 income tax account as follows:

| | | |
|---|---|---|
| May 17, 1984 | Estimated Tax Payment | $ 15,750,000 |
| | 1983 Tax Return Overpayment Applied to 1984 Year | 7,909,226 |
| July 18, 1984 | Estimated Tax Payment | 15,750,000 |
| October 15, 1984 | Estimated Tax Payment | 15,190,774 |

1985, May filed its 1984 return, reporting a liability of $136,161,486, and hence an overpayment of $5,838,514. May elected to credit the overpayment to its tax liability for the succeeding year but did not attach a statement to the 1983 return specifying to which installment of estimated tax the IRS should credit the overpayment. The IRS credited the overpayment to May's first installment of estimated tax for the 1985 tax year. On May's Form 2220 for the 1984 tax year, filed one year later, May indicated that it had applied the $5,838,514 as a credit against its first installment of estimated tax.

The IRS later examined May's 1984 return and determined that May's actual tax liability was $142,740,592, not the $136,161,486 May originally reported. Accordingly, May's tax payments of $142,000,000 fell short of its actual tax liability by $740,592. May's application of the purported overpayment to its 1985 tax liability in the amount of $5,838,514 thus resulted in a reduction in its refund claim in that amount which the IRS treated as a deficiency on May's 1984 tax return. Interest on the $740,592 underpayment, assessed from April 15, 1985, is not at issue in this case. At issue is interest assessed on the $5,838,514 portion of the deficiency from April 15 to October 15, 1984.

By notice dated August 28, 1990, the IRS assessed May $4,810,716 in interest on the deficiency, from May 15, 1985, the due date of May's first estimated tax payment for 1985. May paid the total assessed tax and interest, which the IRS credited in full to May's 1984 account. On January 10, 1992, May filed a Form 843 claiming a refund of $481,045.84 for the interest assessed for the period May 15, 1985 to October 15, 1985. May attached to its claim for refund an amended 1984 federal tax return indicating May's election to apply the 1984 overpayment to its 1985 tax liability, and on the amended return specifically elected to credit the overpayment to May's third estimated

tax payment due October 15, 1985. The IRS disallowed May's claim on June 8, 1992.

There is no contention by defendant that plaintiff was deficient at any time in the payment of any estimated installment taxes for the years in issue. Further, there is no contention by defendant that plaintiff had any taxes, other than the $740,592 discussed above, due and unpaid during the period May 15 to October 15 for the 1983 and 1984 tax years in issue.

## DISCUSSION

Plaintiff's position is straightforward and simple. The IRS can assess interest only when the taxpayer has use of funds that rightfully belong to the government. *Manning v. Seeley Tube & Box Co.*, 338 U.S. 561, 70 S.Ct. 386, 94 L.Ed. 346 (1950); *Avon Products, Inc. v. United States*, 588 F.2d 342 (2d Cir.1978); *Eagle–Picher Industries, Inc. v. United States*, 1979–1 U.S. Tax Cas. (CCH) ¶ 9255, 1979 WL 1305 (S.D.Ohio 1979). Applying this "use of the money" principle to the facts in the instant case, plaintiff argues that the IRS may not assess interest against it until October 15 of each year when May elected to apply its overpayments to the following years' estimated tax payment and thereby created the deficiencies. In short, plaintiff states as fact, that initially the government, not May, had the use of the money in issue from April 15 until October 15 of the 1983 and 1984 tax years, respectively. This fact has not been challenged by defendant, and rightly so.

Defendant's position is not so simple. Defendant argues that once an overpayment is credited to the first installment of the next year's estimated tax, it cannot be used to offset any subsequently determined deficiencies for the prior year. Accordingly, defendant argues, the key to this case is determining when plaintiff's reported overpayment was credited to its estimated tax for the following tax year. Contrary to plaintiff's

Note 2—Continued

| January 15, 1985 | Estimated Tax Payment | 21,300,000 |
| April 15, 1985 | Estimated Tax Payment | 66,100,000 |
| | TOTAL | $142,000,000 |

argument, defendant contends that section 413 of the Tax Reform Act of 1984, Pub.L. No. 98–369, 98 Stat. 494, and not the "use of the money" principle, should apply in resolving when interest begins to accrue on a subsequently determined deficiency for the prior year. As discussed below, section 413 is lacking in anything specific regarding the "use of the money" principle and defendant's position, realistically, is based on a series of Revenue Rulings that have been revoked, modified, and revised over time.[3]

### 1. Statutory and Regulatory Framework

Corporate income tax returns are due on the fifteenth day of the third month following the close of the fiscal year. I.R.C. § 6072(b). The last date prescribed for the payment of tax is the due date for the tax return on which the tax is reported. I.R.C. § 6601(b). Corporations are allowed an automatic six-month extension of time for filing returns if the proper application is made, but there is no corresponding extension of time for paying the tax due on such returns. I.R.C. § 6081(a); Treas.Reg. §§ 1.6081–1, 1.6081–3. Thus, the last day for the payment of the tax is the original due date for the return, without regard to any extensions for the filing of the return. I.R.C. § 6601(b).

Under I.R.C. § 6402, a taxpayer may elect to credit to its estimated tax any overpayment of income from a preceding tax year. The IRS may prescribe regulations to provide "for the crediting against the estimated income tax for any taxable year of the amount determined by the taxpayer or the Secretary to be an overpayment of the income tax for a preceding tax year." I.R.C. § 6402(b). Pursuant to Treas.Reg. § 301.6402–3(a)(5), the taxpayer may elect to apply an overpayment to its estimated payment of tax for the succeeding taxable year by so indicating on its return or amended

return. If the taxpayer makes this election, no interest is allowed on the portion of the overpayment that is credited.

Pursuant to section 6601, the IRS is authorized to assess interest on any tax that "is not paid on or before the last date prescribed for payment," without regard to any extension of time for payment. I.R.C. § 6601(a), (b)(1). Thus, if a tax return shows an underpayment, the IRS may assess interest from the original due date of the return. The IRS's right to assess interest on such underpayments is not at issue in this case. For tax year 1983, plaintiff fully paid, indeed overpaid, its taxes when due, i.e., by April 15 of that year.[4] The dispute herein arose when the IRS calculated interest on the deficiencies from the date plaintiff paid its first installment of estimated tax for the following tax year, a period during which, plaintiff asserts, there were no deficiencies.

The Second Circuit in Avon Products, Inc. v. United States, 588 F.2d 342 (2d Cir.1978), in circumstances significantly similar to those present in this case, addressed the issue of when, pursuant to section 6601, the government may assess interest due on a tax deficiency. In Avon Products, the taxpayer's 1967 taxes were due on March 15, 1968, and were paid in full on June 15, 1968. The taxpayer, having received an extension, filed its 1967 return on September 15, 1968. The taxpayer's initial return reflected a 1967 tax liability of approximately $44.384 million, a total payment of approximately $44.500 million, and a corresponding overpayment of approximately $115,000, which the taxpayer elected to credit against the installment of its estimated 1968 income tax due that same day (September 15). The IRS later determined that the taxpayer's 1967 liability was not approximately $44.384 million, but rather approximately $44.483 million. Hence, the taxpayer had an additional 1967 tax liability of

---

**3.** The Federal Circuit recently reiterated that IRS Revenue Rulings have no binding effect on this court. *B.F. Goodrich Co. v. United States,* 94 F.3d 1545, 1550 n. 5 (Fed.Cir.1996), citing *Trainer v. United States,* 800 F.2d 1086, 1090 n. 7 (Fed.Cir.1986); and *Farmar v. United States,* 231 Ct.Cl. 642, 655 n. 12, 689 F.2d 1017, 1024 n. 12 (1982). For a general discussion on the weight other court's accord to Revenue Rulings see John F. Coverdale, *Court Review of Tax Regulations*

*and Revenue Rulings In the Chevron Era,* 64 Geo.Wash.L.Rev. 35, 79–89 (1995).

**4.** For the 1984 tax year plaintiff, as discussed in the main text, underpaid its taxes in the amount of $740,592, and paid interest on that amount for the period the government was without the use of those funds. The interest on the $740,592 is not an issue in this case.

approximately $99,000, but had nevertheless still overpaid its 1967 taxes, by approximately $17,000. Avon subsequently paid its additional 1967 tax liability of $99,000. *Avon Products*, 588 F.2d at 343. The IRS assessed interest against Avon in the same manner as it has against plaintiff in the case at bar.

The Second Circuit held that section 6601(a) provides that "interest shall begin running when a tax becomes both due and unpaid." *Id.* at 344. Additionally, the court noted that "it is a clearly established principle that interest is not a penalty but is intended only to compensate the Government for delay in the payment of a tax." *Id.* at 343. Accordingly, the court held that the taxpayer's 1967 taxes were due but also paid, and therefore not subject to interest, during the period from June 15 to September 15, 1991 because "[d]uring [that period] Avon had unquestionably paid enough—indeed, $17,000 more than enough—to satisfy its 1967 tax liability." *Id.*

Relying on *Avon Products*, plaintiff contends that the IRS can assess interest only when there is an underpayment (such as the $740,592, for the 1984 tax year). Accordingly, plaintiff argues, the government cannot charge May interest under section 6601(a) until October 15 of each year when May first created the deficiencies by applying the purported overpayments against its next years' estimated taxes and hence used, for the first time, funds which rightfully belonged to the government.

### 2. *Section 413 and Related Revenue Rulings*

Defendant responds that plaintiff would be correct if not for section 413. Defendant

asserts that once an overpayment is credited to the following year's estimated tax, it cannot be used under any circumstance to offset any subsequently determined deficiencies for the prior year. Section 413 precludes the potential double benefit which, defendant alleges, underlies plaintiff's claim.[5] Section 413 provides:

> The application of the Internal Revenue Code of 1954 with respect to the crediting of a prior year overpayment of income tax against the estimated tax shall be determined—
>
> (1) without regard to Revenue Ruling 83–111 (and without regard to any other regulation, ruling, or decision reaching the same result as, or a similar result to, the result set forth in such Revenue Ruling); and
>
> (2) with full regard to the rules (including Revenue Ruling 77–475)[6] before Revenue Ruling 83–111.

Defendant argues that the calculation of deficiency interest pursuant to section 413, its legislative history and the implementing rulings relates solely to those circumstances where reported overpayments are credited to the next year's estimated tax. Further, defendant adds, section 413 applies to this case and overrules *Avon Products* to the extent the result in that case differs from that contemplated by section 413.

The legislative history of section 413 is brief. It provides in part:

> The Act also provides that the rules relating to the crediting of an income tax (individual or corporate) overpayment

---

**5.** Defendant does not identify and explain how plaintiff obtains a double benefit. When plaintiff filed its 1983 and 1984 tax returns in October 1984 and 1985 and credited the overpayment for those tax years to its estimated tax for the following year, the deficiencies occasioned by these actions were subject to interest assessment from that time (October 15) forward. Plaintiff obtained no double benefit. The court is unaware of any actual double benefit that plaintiff will receive if it is found entitled to recover in this case.

**6.** Rev.Rul. 77–475, 1977–2 C.B. 476, held that:

> If an overpayment of income tax for a taxable year occurs on or before the due date of the first installment of estimated tax for the succeeding taxable year, the overpayment is available for credit against any installment of estimated tax for such succeeding taxable year and will be credited in accordance with the taxpayer's election.
>
> If the overpayment occurs after the due date of the first installment of estimated tax for the succeeding taxable year, it may be credited only against an installment of estimated tax due on or after the date the overpayment was made.

against an estimated tax liability shall be determined without regard to Revenue Ruling 83–111. That ruling held that where a taxpayer with an overpayment of tax from a prior year files a timely return pursuant to an extension of time to file, the crediting of the overpayment to the current year's estimated tax liability may not be made prior to the date the return is filed and the taxpayer so elects. Under the Act, it is intended that the taxpayer may elect to credit the overpayment to an estimated tax payment arising after the overpayment arose but before the election is made. Where the credit is made to an estimated tax payment arising prior to the election, interest on any overpayment will not be payable and interest on any underpayment which arises because of a deficiency in tax for the prior year will run from the date the credit is effective.

Staff of the Joint Committee on Taxation, *General Explanation of the Revenue Provisions of the Deficit Reduction Act of 1984,* 98th Cong., 2d Sess., 709 (1984) (footnotes omitted) (hereinafter "Joint Committee Report").[7] Notably, *Avon Products,* discussed above, is not mentioned in the legislative history of section 413.

Plaintiff contends that section 413 is irrelevant to this case because it does not address when interest on a deficiency begins to accrue. Section 6601(a) imposes interest on a tax deficiency. *Avon Products,* plaintiff avers, decided when interest on a tax deficiency should start to run in circumstances significantly similar to those in this case. In contrast, plaintiff asserts that, Congress, by enacting section 413, simply permitted taxpayers to apply reported overpayments against installments of estimated taxes due before the election, but after the overpayments occurred, which had been prohibited under Rev.Rul. 83–111. Plaintiff is correct in this regard.

Rev.Rul. 83–111, 1983–2 C.B. 245 revoked Rev.Rul. 77–475 and addressed the effect of applying a preceding year's overpayment against estimated taxes for the following year with respect to the computation of the addition to tax for the underpayment of estimated tax. Rev.Rul. 83–111 held that an overpayment may be credited only against an installment of estimated taxes due on or after the date the election is made. Similarly, Rev.Rul. 83–112, 1983–2 C.B. 247, addressing interest on a subsequently determined deficiency, held that when a claimed overpayment is either applied against the next year's estimated tax or refunded without interest, interest on a later determined deficiency runs from the date the return is filed. The IRS stated that it reconsidered Rev.Rul. 77–475, in light of the decision in *Avon Products* that interest runs from the date the election is made, "because the same amount of overpayment cannot be applied against separate liabilities during the same period of time."

On March 30, 1984, the IRS revoked Rev. Rul. 83–111 and replaced it with Rev.Rul. 84–58, 1984–1 C.B. 254. Rev.Rul. 84–58 modified Rev.Rul. 77–475 to permit taxpayers to elect to credit an overpayment to any installment of the next year's estimated tax. Rev. Rul. 84–58 provides in part:

> For returns filed after December 31, 1983, the Service will apply overpayments arising on or before the due date of a return against the first installment payment of the next year's estimated tax, unless the taxpayer notifies the Service that the overpayment should be applied against another installment.

Defendant argues that because Rev.Rul. 84–58 permitted a taxpayer to credit an overpayment against an installment of estimated tax before the date the return was filed, it was once again possible for a taxpayer to receive a double benefit. Consequently, defendant avers, the IRS issued Rev.Rul. 88–98, 1988–2 C.B. 356 which held that when an overpayment is credited from the current year to the next year's estimated tax, interest on a subsequent deficiency for the current year runs from the date the credit is effective against

---

7. The discussion of section 413 quoted in the main text is substantially the same as that in the October 21, 1983 House Ways and Means Committee report, H.R.Rep. No. 432, Vol. I, 98th Cong., 1st Sess., 188–190, and in the March 5, 1984 House Report, H.R.Rep. No. 432, Pt. 2, 98th Cong., 2d Sess., 1488–1490.

next year's estimated tax.[8] Therefore, defendant argues, pursuant to Rev.Ruls. 84–58 and 88–98, if a taxpayer elects to credit its overpayment to the next year's estimated tax liability but fails to indicate the installment against which the credit is to be applied, the credit will be applied to the first installment and interest on a subsequent deficiency runs from that date. Thus, the taxpayer is prevented from receiving a double benefit.[9]

In Rev.Rul. 88–98 the IRS posits a fact situation analogous to the facts of plaintiff's 1983 tax year. In *Situation 2*, a corporation filed an application for an automatic extension until September 15, 1984, to file its 1983 income tax return. The corporation made $100 of estimated tax payments in 1983 and paid $120 with the extension application for a total of $220. On September 15, 1984, the corporation filed its 1983 return, showing a tax liability of $210 and elected to have the overpayment of $10 credited to its 1984 estimated tax. Like May, the corporation did not indicate on its return to which installment the IRS should credit the overpayment. Following Rev.Rul. 84–58, the IRS applied the overpayment against the April 15, 1984 installment of estimated tax. In 1985, the IRS examined the corporation's 1983 return and determined that there was a deficiency of $5. Rev.Rul. 88–98 held that interest on that amount accrues from April 15, 1984.

Likewise, the example provided in the legislative history is analogous to plaintiff's 1984 tax year. The hypothetical in the legislative history is as follows:

[F]or example, assume a taxpayer makes estimated tax payments (including withholding) of $10,000 in 1984 and receives an extension of time to file the 1984 return until August 15, 1985. Also assume that a return is filed on August 15, 1985, showing a liability of $8,000 for 1984. The taxpayer may elect to credit the $2,000 overpayment to the April 15 estimated tax payment of his or her 1985 tax. Interest on the $2,000 overpayment will not be payable. If it is later determined that the taxpayer's liability for 1984 was actually $11,000, interest on an underpayment of $3,000 will begin to run on April 15, 1985.

Joint Committee Report at 709. In the legislative history's example, the taxpayer had underpaid its taxes in the amount of $1,000 on the last date for payment. Here plaintiff underpaid its 1984 taxes by the amount of $740,592.

Plaintiff argues that Rev.Rul. 88–98, as applied to this case, can have no force and effect because it is inconsistent with section 6601(a) and the cases construing section 6601(a). Its effect, plaintiff contends, directly conflicts with the Supreme Court's rationale in *Manning* that a later occurring event (such as an election to apply an overpayment) cannot retroactively change whether the government had previously enjoyed full use of all funds rightfully belonging to it. Here, the facts establish that the government had the use of the funds in issue from mid-April through October 15 of each tax year in issue. Plaintiff asserts that it did not have the use of the funds in issue until October 15,

8. Rev.Rul. 88–98 provides in part that:

When a taxpayer claims an overpayment on a return filed on the original date or on a return filed with an extension, and the claimed overpayment is applied in full against an installment of the next year's estimated tax, interest on a subsequently determined deficiency for the earlier year runs from the due date of the installment on that part of the deficiency that is equal to or less than the claimed overpayment and from the original due date on the remainder.

9. Defendant offers, *in terrorem*, the argument that Revenue Rulings 84–58 and 88–98 were established to prevent taxpayers from reaping a double benefit. Contrary to defendant's assertion that plaintiff would get a double benefit,

plaintiff persuasively argues that if the government can charge May interest, the government, not May, will reap a double benefit, and May will suffer a double detriment. First, from mid-April to October 15 of each year, the government enjoyed the interest-free use of May's paid up tax payments. Second, if defendant prevails here, from mid-April to October 15 of each year, the government would receive interest on those same overpayments. Defendant has not established to the satisfaction of the court that there is a potential for the plaintiff to enjoy a double benefit in this case. It is defendant, if its position is accepted, who will reap a double benefit. There may be situations where a plaintiff's tax payments are so deficient that a double benefit may arise, but this is not such a situation.

and therefore no deficiency was created until that date.

In *Manning,* the IRS assessed a tax deficiency against the taxpayer and assessed interest on that deficiency. The following year the taxpayer applied a net operating loss carryback to the prior year and eliminated the deficiency. The issue was whether the interest on a validly assessed deficiency is abated when the deficiency itself is abated by the carryback of a net operating loss. *Manning,* 338 U.S. at 565, 70 S.Ct. at 388–89. The Court held that although the taxpayer had eliminated the deficiency at a later date, the taxpayer still had to pay interest on the deficiency because the government was without the use of the funds from the date of the deficiency to the date the net operating loss carryback occurred. Chief Justice Vinson wrote:

> The fact that the statute permits the taxpayer subsequently to avoid the payment of that debt in no way indicates that the taxpayer is to derive the benefits of the funds for the intervening period. In the absence of a clear legislative expression to the contrary, the question of who properly should possess the right of use of the money owed the Government for the period it is owed must be answered in favor of the Government.

*Id.* at 566, 70 S.Ct. at 389. In the case at bar the situation is reversed. Initially, the government had the use of the funds, later a deficiency was created which, for the first time, deprived the government of the use of the funds. Thus, the fact that May used its purported overpayments to offset a subsequent liability does not indicate that the government was deprived of the use of those monies for the period during which the government undisputedly possessed those funds.

Plaintiff asserts that the election to credit an overpayment will affect the assessment of interest only when the taxpayer credits the overpayment against an earlier, underfunded or wholly unpaid installment obligation. If an earlier installment obligation had been fully paid and the overpayment is simply credited as an addition to that obligation, interest would not run from the date the earlier installment was due because on that date the installment was already fully paid. Plaintiff contends that in this case, its first and second installments had been paid in full.[10] There is no assertion by defendant that plaintiff is wrong in this regard.

Defendant counters that plaintiff cannot have it both ways. A taxpayer, defendant argues, cannot use the same funds to offset

---

10. Defendant concedes that under the Revenue Rulings it relies on plaintiff would prevail if it had credited its overpayments to the third installment. Plaintiff, as a second string to its bow, maintains that it elected to apply its reported overpayments to its third installment of estimated taxes not once, but twice. First, on Form 1120 filed on October 15 of each year in issue, plaintiff elected to credit its overpayments toward its tax liability for the succeeding years. However, plaintiff did not designate on form 1120 or otherwise any particular installment relative to their credit designation. Second, on plaintiff's amended returns, filed on January 10, 1992, plaintiff asserts that May "reaffirmed" its elections by indicating that "[f]orm 1120X is being filed to amend the designation of the quarter to which taxpayer's overpayment as reflected on the original return is to be applied. The overpayment ... is to be applied to the third quarter estimated tax payment due October 15 [of each tax year in issue]."

In the event that this court deems that May's original returns do not specify its elections, plaintiff asserts that its elections on its amended returns should be honored. Plaintiff cites *Wood-*

*bury v. Commissioner,* 900 F.2d 1457, 1461 (10th Cir.1990) for the proposition that a taxpayer is always allowed to amend its return if it is merely adopting a position which is consistent with that reflected on its original return. But, *Woodbury* also holds that "where ... the taxpayer's initial election later becomes, through hindsight, less financially advantageous than some other option, the improvident election does not entitle the taxpayer to revoke that election. *Id.* at 1461. Although plaintiff steadfastly maintains that it has always sought to apply its overpayments to the following years' third installment of estimated taxes, plaintiff's original Forms 2220, which plaintiff filed with the IRS one year after its returns, indicate that May itself had credited its overpayments to the following years' first installment of estimated taxes. Whether plaintiff elected to credit the funds in issue to the first, second or third installment is irrelevant in this case because the government had the use of those funds until October 15 of each relevant year and the funds were not needed to offset any underpayment of an earlier installment. Accordingly, the court need not and does not enter this thicket since the case is subject to disposition on the "use of the money" principle.

two different tax liabilities. When plaintiff filed its 1983 and 1984 tax returns, plaintiff elected to credit its overpayment for each year to the next year's estimated tax liability, but neglected to attach a statement to either return indicating to which installment of estimated tax the IRS should credit the overpayment. Pursuant to Rev.Rul. 84–58, and Rev. Rul. 88–98, the IRS credited the overpayment to the first installment of estimated tax. Therefore, defendant argues, plaintiff's taxes were unpaid and the IRS properly calculated interest on the deficiency from May 15, the due date of the first installment of estimated tax. Defendant is in error. Plaintiff's taxes were fully paid at all times.[11] It must be remembered that it was plaintiff's overpayments that were reduced—not that its taxes were underpaid. Plaintiff's taxes were fully paid from April 15 to October 15, 1984. Plaintiff's overpayment was reduced after October 15, 1984 when it filed its return and credited its overpayment to the following year's estimated taxes.

Defendant argues that in both *Manning* and *Avon Products* the "use of the money" principle was applied absent a clear statute or legislative expression to the contrary. In the instant case, defendant maintains that there is statutory authority, *i.e.*, section 413, which trumps the "use of the money" principle. As noted previously, the legislative history of section 413 does not mention the *Avon Products* decision, nor does it mention the "use of the money" principle. Defendant agrees that section 413 does not overrule the holding in *Avon Products* that interest ac-

crues from the date the tax becomes "due and unpaid." However, defendant argues, by allowing a taxpayer the option of crediting an overpayment to a succeeding year's installment before the overpayment was reported on a return, section 413 and the rulings implementing it affected the date that the tax for the prior year becomes "due and unpaid."

Plainly read, section 413 does not "trump" the "use of the money" principle. Absent a clearly expressed legislative intent to the contrary, this court must ordinarily regard the plain language of the statute as conclusive. Therefore, in order to prevail, defendant must point to a clearly expressed legislative intent to overrule the "use of the money" principle and, in effect, overrule section 6601. *Principal Mut. Life Ins. Co. v. United States*, 50 F.3d 1021, 1024 (Fed.Cir. 1995); citing *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). There is no indication in the plain language of the Act that Congress intended to affect the date that a tax becomes "due and unpaid," or that Congress was abrogating the long established principle that interest is not a penalty.[12]

Defendant, however, points to the language in the Joint Committee Report which states: "Where the credit is made to an estimated tax payment arising prior to the

---

**11.** With the exception of the $740,592, which is not at issue.

**12.** Section 413's legislative history indicates that Congress' general legislative purpose was to treat, to the extent possible, taxpayers who pay their tax by making estimated tax payments no more favorably than those who pay their tax primarily through wage withholding. Staff of the Joint Committee on Taxation, *General Explanation of the Revenue Provisions of the Deficit Reduction Act of 1984*, 98th Cong., 2d Sess., 707 (1984). More specifically, the committee report describes Congress' intent to restructure the prior law's exceptions to the underpayment penalty. Defendant's position treats plaintiff less favorably than those who pay their tax primarily through wage withholdings. Congress surely did not intend such a result and Revenue Rulings which mandate such a result should not be followed.

As the Supreme Court stated in *Church of the Holy Trinity v. United States*, 143 U.S. 457, 459, 12 S.Ct. 511, 512, 36 L.Ed. 226 (1892):

> [F]requently words of general meaning are used in a statute, words broad enough to include an act in question, and yet a consideration of the whole legislation, or of the circumstances surrounding its enactment, or of the absurd results which follow from giving such broad meaning to the words, makes it unreasonable to believe that the legislator intended to include the particular act.

A literal reading of the Revenue Rulings blindly applied would produce a result which runs counter to the notion that interest should not be assessed for a period when the underlying taxes were fully paid and the government had full use of the monies due and paid for that period.

election ... interest on any underpayment which arises because of a deficiency in tax for the prior year will run from the date the credit is effective." Similarly, Rev.Rul. 88–98 provides:

> If an amount that was originally paid with respect to the tax is subsequently credited against a different obligation, the date on which the first tax is both due and unpaid is not necessarily the filing date of the request for the credit but rather the date as of which the credit is effective as payment of the other obligation, even when that date precedes the date of the credit election.

The underlying assumption, that defendant fails to make, must be that the taxpayer actually underpaid the estimated tax for the first or second installment of the successive tax year. It is common sense to so assume, for there is no reason, at least none advanced by defendant, for a taxpayer to apply an overpayment to an estimated tax installment which had been fully paid. Indeed, the examples provided in Rev.Ruls. 77–475 and 83–111, which Rev.Rul. 84–58 modified and revoked, respectively, specifically noted that the taxpayer had underpaid the earlier installment to which it sought to apply its overpayment from the previous tax year. Likewise, the example in the legislative history must also have as an underlying assumption that the taxpayer had underpaid its first installment of estimated tax for the successive tax year. Under those facts, the same funds could be used to offset separate liabili-

ties, and therefore the potential for the taxpayer receiving a double benefit could be realized.

As noted above, under section 6601, the last date prescribed for the payment of tax is the original due date for the return on which the tax is reported, without regard to any extensions for the filing of the return. I.R.C. § 6601(b). Therefore, consistent with the "use of the money" principle followed in both *Manning* and *Avon Products,* interest on deficiencies may be charged to compensate the government for funds which it did not possess but which it rightfully should have possessed.[13] Before October 15 of each relevant tax year, not only had plaintiff paid the full sum for which it was liable, but its payment was not deficient in any respect. The IRS's application of the overpayment to the first installment of estimated tax for the following year, which had already been paid, cannot change the fact that the government had the use of the funds in issue from April 15 to October 15 and, therefore, suffered no underpayment. Moreover, defendant has failed to demonstrate that allowing plaintiff recovery here would result in a double benefit to plaintiff with respect to the funds at issue. Accordingly, plaintiff should not be treated as if it had not paid the full amount of its taxes during the period from May 15 to October 15 of 1983 and 1984.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is granted and

---

**13.** More recently, the "use of the money" principle was followed by the Ninth Circuit in *Brookhurst, Inc. v. United States,* 931 F.2d 554 (9th Cir.), *cert. denied,* 502 U.S. 907, 112 S.Ct. 299, 116 L.Ed.2d 242 (1991). In *Brookhurst,* the court determined that a taxpayer who had received an erroneous refund of an employment tax was liable for interest from the date of the erroneous refund, not from the time the return was due. In so holding, the court stated:

> These taxes remained paid until the government erroneously refunded the monies on May 10, 1984. In a similar situation, the Second Circuit concluded that interest begins to accumulate "when a tax becomes both due and unpaid." *Avon Products, Inc. v. United States,* 588 F.2d 342, 344 (1978). The purpose of section 6601 is best served by this interpreta-

tion of the rule. A taxpayer who timely pays his taxes is not penalized when the government erroneously refunds those monies. Rather, the taxpayer is charged interest only for the time he had the use of funds which rightfully belonged to the United States.

*Id.* at 558. In the case at bar, plaintiff's overpayment for 1983, for example, was reduced from $7,909,226 to $2,981,069. The deficiency, $4,928,157, was created in October 1984 when plaintiff filed its 1983 tax return. At no time had plaintiff underpaid its 1983 taxes. Plaintiff's taxes for the period May 15 to October 15, 1984 were fully paid and no taxes were due during that period. Any interest assessment for this period can only be considered a penalty, and thus such an assessment cannot be allowed.

defendant's cross-motion for summary judgment is denied. The parties have 45 days from the date of this opinion to file with the court the appropriate amounts to be refunded to plaintiff with respect to the tax years 1983 and 1984 in order that the court may enter a final judgment in this case. No Costs.

