**NEW YORK LIFE INSURANCE CO., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 96–800C.**

United States Court of Federal Claims.

April 22, 1998.

Robert J. Cynkar, and Michael W. Kirk, Cooper, Carvin & Rosenthal, PLLC, Washington, DC, with whom was Michael A. DeMicco, Associate General Counsel New York Life Insurance Company, New York City, and John B. Rhinelander, and Janice H. Ziegler, Shaw Pittman, Potts & Trowbridge, Washington, DC, of Counsel, for plaintiff.

Steven J. Gillingham, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

HODGES, Judge.

Plaintiff filed a complaint in this court to recover money paid for health expenses of certain insurance agents whom it described as independent contractors. Plaintiff moved for summary judgment arguing that although these medical and hospital expenses were covered by a group health plan, they should have been paid by Medicare because Medicare was the primary payer for independent contractors 65 years of age and over prior to the enactment of the Omnibus Budget Reconciliation Act of 1993. *See* 42 U.S.C. § 1395y(b) (Supp. IV 1992). Defendant moved to dismiss asserting that Medicare was the secondary payer with respect to individuals covered under a group health plan irrespective of their employment status. Accordingly, plaintiff was required to pay primary on claims submitted by insurance agents who were covered under the group health plan.

Counsel requested that we determine whether independent contractors are covered under the Medicare as Secondary Payer statute before deciding whether the agents in fact are independent contractors, because defendant's position is that they are covered in either event. For the purposes of this Opinion therefore, we assume that the agents are independent contractors.

The issue is whether independent contractors receive health care benefits as a result

of their employment relationship with plaintiff. If so, plaintiff pays first regardless of whether the individuals are also covered under Medicare.

## STATUTORY HISTORY

Upon enactment, the Medicare program was the primary payer for all Medicare-covered services. Individuals covered by group health plans were also eligible for Medicare benefits. *Health Ins. Association of America, Inc. v. Shalala*, 23 F.3d 412, 414 (D.C.Cir.1994). Through a series of amendments, Congress made Medicare a secondary payer with respect to certain group health plans. The amendments were enacted to reduce Medicare costs. *Id. Accord Zinman v. Shalala*, 67 F.3d 841, 845 (9th Cir.1995). *See also* H.R.Rep. No. 1167 at 352, *reprinted in* 1980 U.S.C.C.A.N. 5526, 5717. The amendments are commonly known as the "Medicare as Secondary Payer" provisions. *See* 42 U.S.C. § 1395y.

Congress amended the MSP provisions in 1982 to establish Medicare as the secondary payer on claims made by the "working aged" covered under a group health plan.[1] Several years later, Congress passed the Omnibus Budget Reconciliation Act of 1986. Pub.L. No. 99–509, 100 Stat. 1874. This Act made Medicare the secondary payer on certain group health plans that were provided to an "active individual" based on the individual's disability.[2] The disability provisions were set to expire in 1995.

1. The statute required that a group health plan pay primary to Medicare where an individual was employed at the time of such health care service, and to the extent such service was made, the expenses could reasonably be expected to be paid by a group health plan. This provision applied to the "working aged," which included individuals over age 64 but under 70 years old. *See* Section 116 of the Tax Equity and Fiscal Responsibility Act (TEFRA) of 1982, Pub.L. No. 97–248, 96 Stat. 324, 353.

2. Congress defined active individual to mean "an employee (as may be defined in regulations), the employer, self-employed individual (such as the employer), an individual associated with the employer in a business relationship, or a member of the family of any such persons." 42 U.S.C. § 1395y(b)(1)(B)(iv)(I) (Supp. IV 1992).

The Health Care Finance Administration, the agency charged with administering Medicare, published regulations implementing the "working aged" provisions of the MSP statute. 54 *Fed.Reg.* 41716 (October 11, 1989). The regulation "sets forth the limitations that apply to Medicare payment for services furnished to employed aged and to aged spouses of employed individuals who are covered under an employer group health plan...." 42 C.F.R. § 411.70(a) (1989).[3] "Employed" was defined to include common law employees as well as self-employed persons. *See* 42 C.F.R. § 411.70(d) (1989). Medicare would pay secondary to an employer group health plan where the individual was "employed and covered, by reason of that employment, under an employer plan." 42 C.F.R. § 411.72(a)(4)(i) (1989).

Soon after the regulations were published, Congress made further statutory changes to the "working aged" provisions. It prohibited a group health plan from "tak[ing] into account, for any item or service furnished to an individual 65 years of age or older at the time the individual is covered under the plan by reason of the current employment of the individual ... that the individual is entitled to benefits ... [under Medicare.]" 42 U.S.C. § 1395y(b)(1)(A)(i)(I) (Supp. IV 1992).[4] Congress changed the TEFRA phrase "under which such individual is covered by reason of such employment" to "by reason of the current employment of the individual ..." in 1989. Pub.L. No. 101–239 103 Stat. 2106, 2229.

3. The Health Care Finance Administration originally issued regulations to implement the TEFRA provisions on October 11, 1985. 42 C.F.R. § 405.341–344 (1985). These regulations interpreted the terms "employment" and "employed" to apply to the self-employed. The 1989 regulations explicitly include self-employed individuals such as independent contractors.

4. Congress also provided that employer group health plans were required to provide the same health benefits to the "working aged" that were provided to any other employee under age 65. This requirement insured that each employee would receive the same health care benefits regardless of the age of the employee. 42 U.S.C. § 1395y(b)(1)(A)(i)(II) (Supp. IV 1992) (commonly known as the anti-discrimination provisions.)

The statute provided that the term "group health plan" as defined by 26 U.S.C. § 5000(b)(1) (Supp. IV 1992) included "any plan of ... an employer ... to provide health care ... to the employer's employees...." *See* 42 U.S.C. § 1395y(b)(1)(A)(v) (Supp. IV 1992).

Congress did not define the terms "employed," "employer," or "by reason of the current employment of the individual" in the 1989 and 1990 MSP statute. Congress did not disturb the Health Care Finance Administration's interpretation contained in 42 C.F.R. § 411.70 (1989).

Congress amended the MSP provisions again in 1993. *See* 42 U.S.C. § 1395y(b) (1994). The definition of "group health plan" was amended to include:

> [A] plan ... of ... an employer ... or employee organization to provide health care ... to the employees ... the employer, *others associated or formerly associated with the employer in a business relationship,* or their families.

26 U.S.C. § 5000(b)(1) (1994) (emphasis added). The "working aged" section provided that a group health plan:

> [M]ay not take into account that an individual ... who is covered under the plan by virtue of the individual's current employment status with an employer is entitled to benefits ... [from Medicare].

42 U.S.C. § 1395y(o)(1)(A)(i)(I) (1994).[5] For the first time, the statute defined "current employment status." An individual was said to have current employment status "if the individual is an employee, is the employer, or is *associated with the employer in a business relationship.*" 42 U.S.C. § 1395y(b)(1)(E)(ii) (1994) (emphasis added).

**BACKGROUND**

Plaintiff provides a group health plan for the benefit of its qualifying insurance agents. Between December 1990 and August 1993, plaintiff maintained contractual relationships with both active and retired agents.[6] Plaintiff paid health expenses before Medicare during that period for active agents age 65 and over, so long as the agents qualified for coverage under the group health plan. From January 1991 through June 1992 plaintiff also paid primary to Medicare for retired agents age 65 and over, who met the qualifications. Beginning in July 1992, plaintiff paid primary for retired agents age 65 and over whenever younger agents with the same qualifications would be entitled to coverage.

Plaintiff claims that Medicare was the primary payer for its "working aged" independent contractors from December 1990 through August 1993. If the insurance agents' coverage under the group health plan was not part of an employment relationship, Medicare was responsible to pay first. Therefore, plaintiff claims that it was only a secondary insurer to Medicare.

By defining the phrase "current employment status" to include individuals associated with the employer in a business relationship in 1993, Congress expanded the group of individuals to which Medicare pays secondary according to plaintiff. As Congress did not define this term prior to 1993, plaintiff argues that Congress intended to refer only to the common law master-servant relationship. Thus, plaintiff seeks recovery of payments made for its independent contractors between December 21, 1990 and August 10, 1993.

Defendant contends that the MSP "working aged" provisions were not limited to common law employees before 1993, but extended to independent contractors as well. The Health Care Finance Administration consis-

---

**5.** The anti-discrimination provision in the 1993 MSP statute was also amended to state that "any individual age 65 or older ... who has current employment status with an employer shall be entitled to the same benefits under the plan under the same conditions as any such individual ... under age 65." 42 U.S.C. § 1395y(b)(1)(A)(i)(II) (1994).

**6.** "Retired Agent" refers to agents who have entered into a retired agents contract whereby they are entitled to certain retirement benefits without regard to first year commissions. "Active Agents" however, operate pursuant to standard contracts and are eligible to participate in the group health plan if in the preceding year they met the minimum threshold of first year commissions.

tently has stated that the Omnibus Budget Reconciliation Act of 1993 did not expand the "working aged" provisions to include independent contractors; it only clarified the existing statute. Therefore, plaintiff was the primary payer on claims of the "working aged" covered under the group health plan.

It is uncontested that after OBRA 1993, plaintiff is the primary payer on claims made by independent contractors age 65 and over who are covered by the group health plan. Medicare is the secondary payer. The issue here is pre–1993 coverage.

## DISCUSSION

■ When reviewing an Agency's construction of the statute it is charged with administering the court determines "whether Congress has directly spoken to the precise question at issue." *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). If a court finds that the intent of Congress is clear, it must give effect to the "unambiguously expressed intent of Congress." *Id.* If the statute is silent or ambiguous with regard to the question before the court, the question becomes whether the agency's statutory interpretation is a reasonable one. *Id.* at 843, 104 S.Ct. 2778. For this court to review the Secretary's interpretation of the Medicare as Secondary Payer statute on the basis of reasonableness, we must find that Congress has not expressed an intent as to its meaning.

■ We must address the plain language of 42 U.S.C. § 1395y(b) (Supp. IV 1992) first. Prior to OBRA 1993, Medicare was the secondary payer if an individual age 65 years or older was covered under a group health plan "by reason of the current employment of the individual." 42 U.S.C. § 1395y(b)(1)(A)(i)(I) (Supp. IV 1992). Congress did not define this phrase or provide legislative history as to its meaning. "[Where] the statute is silent or ambiguous on a point, 'considerable weight' and 'substantial deference' must be

accorded to the interpretation of a statute by the agency that is responsible for its implementation." *Rosete v. OPM,* 48 F.3d 514, 517 (Fed.Cir.1995) (citing *Rust v. Sullivan,* 500 U.S. 173, 184, 111 S.Ct. 1759, 114 L.Ed.2d 233 (1991)).

Plaintiff argues that the MSP statute is not silent or ambiguous. The phrase "by reason of the current employment of the individual" refers solely to common law employees in determining whether Medicare is the secondary payer. Therefore, no deference is due the Agency's interpretation. When Congress uses the term "employee" without defining it, the term must be understood to refer to its common law meaning according to plaintiff. Plaintiff points to a Supreme Court case construing the meaning of "employee" where the statute did not provide guidance. *See Nationwide Mutual Insurance Co. v. Darden,* 503 U.S. 318, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992).[7] In that case, Darden, an insurance sales agent, agreed to sell only Nationwide insurance policies. In exchange, Nationwide agreed to enroll Darden in its retirement plan. When Darden began selling insurance policies for other companies, Nationwide disenrolled him from the retirement plan, and refused to pay him retirement benefits. The Court concluded that Darden would be entitled to benefits only if he was an "employee," which ERISA defined as "any individual employed by an employer." *Id.* at 321, 112 S.Ct. 1344.

The Court in *Darden* adopted the common law meaning of "employee." "Where Congress uses terms that have accumulated settled meaning under ... the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms...." *Id.* at 322, 112 S.Ct. 1344. The Court explained that the common law test was proper because it could not find "any provision either giving specific guidance on the term's meaning or suggesting that construing it to incorporate traditional agency law principles would thwart the congressional design or

---

7. On April 21, 1998 plaintiff filed notice of a recent decision involving a New York Life insurance agent. *See Barnhart v. New York Life Insurance Company,* 141 F.3d 1310 (9th Cir.1998). *Barnhart* addresses whether plaintiff was an em-

ployee or independent contractor for purposes of ERISA and the ADEA. It does not provide guidance as to the meaning of the phrase "by reason of the current employment of the individual" in the MSP statute.

lead to absurd results." *Id.* at 323, 112 S.Ct. 1344.

The Supreme Court adopted the common law definition of "employee" in the ERISA statute, but that holding does not control this case. We are not addressing the meaning of "employee," but the phrase "by reason of the current employment of the individual." The word "employment" is not limited to the common law master-servant relationship. Black's Law Dictionary defines employment to include "that which engages or occupies; that which consumes time or attention; also an occupation, profession, trade, post or business...." Black's Law Dictionary, 6th ed.1990. No administrative regulation was at issue in *Darden.* No possibility of express or implicit delegation to an agency applied. The Court had no guidance concerning the term's meaning, but only a statute to rely on. In this case, the Agency authorized to administer Medicare has issued a regulation defining the key terms. When undertaking a *Chevron* analysis, the underlying premise is to review an agency's construction of a statute which it is in charge of administering. *Chevron,* 467 U.S. at 842. The phrase "by reason of the current employment of the individual," in the MSP statute is not clear on its face. That is, it does not specifically include or exclude independent contractors. In that situation, "a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." *Id.* at 844, 104 S.Ct. 2778.

Plaintiff argues that the statute must be read as a whole. The MSP statute defined "group health plan" by reference to 26 U.S.C. § 5000(b)(1) (Supp. IV 1992), which applied only to "employees" prior to the 1993 amendments. *See* 42 U.S.C. § 1395y(b)(1)(A)(v) (Supp. IV 1992). Defendant contends however, that the sole purpose of 26 U.S.C. § 5000(b)(1) "is to describe which health plans are subject to the MSP statute—not who they must include—or what occurs if a plan includes beneficiaries other than common law employees." Def.Br. at 30.

We agree with defendant's position. Plaintiff provides a group health plan for the benefit of individuals age 65 and over who

meet the sales requirements. Plaintiff has not disputed the fact that it offers a group health plan that is subject to the MSP statute. The "working aged" provisions in the statute speak in terms of "individuals" for whom group health plans must pay primary, not "employees."

Plaintiff relies on Congress' broad definition in the disabled provisions of the MSP statute to support its assertion that Congress must have intended only common law employees to be covered under the "working aged" provisions. The disabled active individuals provision of the MSP statute was enacted in 1986 stating that "[a] large group health plan ... may not take into account that an active individual ... is entitled to benefits...." 42 U.S.C. § 1395y(b)(1)(B)(i) (Supp. IV 1992). Congress defined the term "active individual" to mean, "an employee ... the employer, self-employed individual ... an individual associated with the employer in a business relationship, or a member of the family of any of such persons." 42 U.S.C. § 1395y(b)(1)(B)(iv)(I) (Supp. IV 1992). Plaintiff contends that the inclusion of "self-employed individuals" and those "associated with the employer in a business relationship" clearly covered independent contractors as well as common law employees. "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States,* 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983) (quoting *United States v. Wong Kim Bo,* 472 F.2d 720, 722 (5th Cir. 1972)).

The disabled provisions in the MSP statute were amended in 1986, while the "working aged" provisions were amended in 1982 and then in 1989 and 1990. As defendant points out, because Congress chose to be more specific in 1986 when drafting the disabled provisions, proves nothing about the intention of Congress in 1989 and 1990 when it amended the "working aged" provisions. There is no evidence to suggest that Congress was consciously discriminating between the disabled and the working aged. It would be improper

for this court to speculate as to Congress' intention based on two separate provisions in the Medicare statute that were enacted years apart.

In the Omnibus Budget Reconciliation Act of 1993. Congress defined the term "current employment status" to include individuals "associated with the employer in a business relationship." 42 U.S.C. § 1395y(b)(1)(E)(ii) (1994). This amendment was consistent with the HCFA's regulations that were proposed in 1988, and in effect since 1989. The Supreme Court has held that "congressional failure to revise or repeal the agency's interpretation is persuasive evidence that the interpretation is the one intended by Congress." *Young v. Community Nutrition Institute*, 476 U.S. 974, 983, 106 S.Ct. 2360, 90 L.Ed.2d 959 (1986) (quoting *NLRB v. Bell Aerospace, Co.*, 416 U.S. 267, 275, 94 S.Ct. 1757, 40 L.Ed.2d 134 (1974)).

Once it is determined that Congress has not spoken to the precise question at issue, the court must ask "whether the agency's answer is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843. Congress implicitly left a gap for the Agency to fill, so we must defer to the HCFA's reasonable interpretation. It has "long [been] recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer." *Id.* at 844, 104 S.Ct. 2778. This court must affirm any "reasonable interpretation made by the administrator of [the] agency." *Chacon v. United States*, 48 F.3d 508, 512 (Fed.Cir. 1995) (quoting *Chevron*, 467 U.S. at 844). Moreover, "[t]he court need not conclude that the agency construction was the only one it permissibly could have adopted." *Id.* (quoting *Chevron*, 467 U.S. at 843 n. 11.)

We find nothing impermissible in the Secretary's interpretation of the MSP statute. In a similar case, *Therkelsen v. Shalala*, 839 F.Supp. 661 (D.Minn.1993), the wife of an insurance sales agent filed for Medicare reimbursement rather than submit a claim to the employee group health plan by which she and her husband received coverage. The Health Care Finance Administration denied the claim stating that it should first be sent to her group health plan for payment.

Therkelson claimed that her husband was an independent contractor and the terms "employed" and "employment" in 42 U.S.C. § 1395y(b)(3)(A)(i) (1987) referred only to common law employees. According to the plaintiff, Medicare would not pay benefits to individuals who are employed and are covered under the plan by reason of their employment. Plaintiff argued that because her husband wasn't employed in the traditional sense, Medicare was the primary payer on her claim.

The court in *Therkelsen* stated that neither the statute nor the legislative history "expressly states that self-employed individuals are excluded from the definition of "employed" and "employment" in the statute." *Id.* at 668. Plaintiff had not identified "any plausible reason why the court should impute such an intention from Congress' silence." *Id.* There is no reason to distinguish between two types of employment relationships in determining whether Medicare benefits are proper, when both types of individuals are covered by the group health plan and could expect that their medical expenses would be paid.

Plaintiff argues that because Congress was explicit in including individuals "associated with the employer in a business relationship" in the 1993 amendments to the MSP statute, they must not have been included before. As a result, the Agency's inclusion of self-employed individuals in the regulations is unreasonable. While the legislative history is sparse with respect to Congress' intent when enacting the 1993 statute, it does provide some guidance.

In OBRA 1993, Congress set forth several aspects of the MSP statute that needed to be addressed. The House Conference Report provided the changes proposed by Congress and detailed the present state of the law. H.R.Conf.Rep. No. 213, at 803–806, *reprinted in* 1993 U.S.C.C.A.N. 1492–1495. The "working aged" provisions were discussed only briefly, and specifically in reference to the disabled provisions which were set to expire in 1995. According to the report, the

disabled provisions in the MSP statute currently applied to individuals eligible for Medicare by reason of the disability and "continue[d] to be treated as an employee by an employer, on the basis of commonly accepted indicators of employee status, even though the individual [was] not currently working." *Id.* at 1493.

With the 1993 Act, Congress replaced the term "active individuals" in the disabled provision with the phrase "by virtue of the individual's current employment status." 42 U.S.C. § 1395y(b)(1)(B)(i) (1994). In doing this, the Conference Report on the House ·Bill provided that the disabled provision, "would be modified to tie directly to employment status consistent with the provision *that applies* to aged beneficiaries." 1993 U.S.C.C.A.N. at 1493 (emphasis added). As the Conference Report on the Conference Agreement explains, the definition in the disabled provisions were being clarified "to conform with the definition for working aged beneficiaries." *Id.* at 1495. This suggests that Congress was not making changes to the "working aged" provisions, but rather the changes were directed at the disabled. While this hint of legislative history does not explicitly provide guidance as to what Congress intended in 1989 and 1990, it does however suggest that the Agency's interpretation was reasonable.

The Health Care Finance Administration construed the phrase, "by reason of the current employment of the individual" to include not only employees, but also self-employed persons. We have no reason to think that this interpretation is unreasonable.

## CONCLUSION

Plaintiff provided health benefits to its life insurance agents when those agents met the minimum sales requirements. While plaintiff was under no obligation to provide these health benefits, they provided an attractive incentive to entice agents to sell insurance policies on behalf of New York Life. There is no dispute that these agents were employed and they received health benefits as a result of their employment relationship with plaintiff.

We cannot conclude that the Agency's interpretation of the "working aged" provisions in 42 U.S.C. § 1395y(b) (Supp. IV 1992) prior to enactment of OBRA 1993 was unreasonable. Defendant's motion to dismiss is GRANTED. The Clerk is directed to dismiss plaintiff's complaint. No costs.