**NEW YORK LIFE INSURANCE COMPANY, Plaintiff–Appellant,**

v.

**UNITED STATES, Defendant–Appellee.**

**No. 98–5108.**

United States Court of Appeals, Federal Circuit.

Sept. 15, 1999.

Robert J. Cynkar, Cooper, Carvin & Rosenthal, PLLC, of Washington, DC, argued for plaintiff-appellant. With him on the brief were Michael W. Kirk and R. Ted Cruz. Of counsel on the brief was John B. Rhinelander, Shaw, Pittman, Potts & Trowbridge, of Washington, DC.

Steven J. Gillingham, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief was David M. Cohen, Director.

Before RICH,* SCHALL, and BRYSON, Circuit Judges.

SCHALL, Circuit Judge.

New York Life Insurance Company ("New York Life") appeals the April 22, 1998 decision of the United States Court of Federal Claims dismissing its complaint against the United States. *New York Life Ins. Co. v. United States,* 41 Fed.Cl. 60 (1998). In its suit, New York Life sought to recover money it paid as insurer under a group health plan between December 21, 1990 and August 10, 1993 for the medical expenses of its insurance agents age 65 and over. It contended that, during the indicated period, the primary responsibility for paying health care costs for these agents rested with Medicare. The Court of Federal Claims dismissed the complaint for failure to state a claim upon which relief could be granted, based upon its conclusion that Medicare was a secondary payer and that New York Life was responsible as the primary payer. We vacate and remand.

## BACKGROUND

### A. *The statutory and regulatory scheme*

Until 1980, Medicare "paid for services without regard to whether they were also covered by an employer group health plan. As a cost-cutting measure, however, Congress eventually enacted a series of amendments designed to make Medicare a 'secondary' payer with respect to such plans." *Health Ins. Ass'n of Am. v. Shalala,* 23 F.3d 412, 414 (D.C.Cir.1994), *cert. denied,* 513 U.S. 1147, 115 S.Ct. 1095, 130

---

* Circuit Judge Rich heard oral argument in this case, but died on June 9, 1999. The case was decided by the remaining judges in accordance with Fed. Cir. Rule 47.11.

L.Ed.2d 1064 (1995). These amendments are known as the "Medicare as Secondary Payer" ("MSP") statute or the MSP provisions. They are codified at 42 U.S.C. § 1395y. When the MSP statute applies, a private group health plan must pay for an expense first. Thus, it is the "primary payer." Medicare pays for any remaining amount of the expense not satisfied by the group health plan. Consequently, it is the "secondary payer." *See Blue Cross & Blue Shield of Texas, Inc. v. Shalala*, 995 F.2d 70, 73 (5th Cir.1993).

At issue in this case is the version of the "working aged" provision of the MSP statute that was in effect between December 21, 1990 and August 10, 1993, when New York Life made the payments that it sought to recover in its suit in the Court of Federal Claims. That provision made Medicare a secondary payer with respect to working individuals who were over age 64 but under age 70, and who were covered by group health plans. It was enacted as part of the Tax Equity and Fiscal Responsibility Act of 1982, Pub.L. No. 97–248, 96 Stat. 324, 353, and was codified at 42 U.S.C. § 1395y(b) (Supp. IV 1992). *See New York Life Ins. Co.*, 41 Fed.Cl. at 61 n. 1.

The working aged MSP provision in effect during the time period at issue made Medicare a secondary payer with respect to working aged individuals by providing in pertinent part as follows:

A group health plan—

(I) may not take into account, for any item or service furnished to an individual 65 years of age or older at the time the individual is covered under the plan by reason of the current employment of the individual (or the individual's spouse), that the individual is entitled to benefits under [Medicare], and

(II) shall provide that any employee age 65 or older, and any employee's spouse age 65 or older, shall be entitled to the same benefits under the plan under the same conditions as any employee, and the spouse of such employee, under age 65.

42 U.S.C. § 1395y(b)(1)(A)(i) (Supp. IV 1992). *See also* Pub.L. No. 101–239, 103 Stat. 2106, 2229 (1989); *New York Life Ins. Co.*, 41 Fed.Cl. at 61. The statute did not explain the language, "individual ... covered under the plan by reason of the current employment of the individual." It did, however, incorporate by reference a definition of "group health plan" from the Internal Revenue Code, 26 U.S.C. § 5000(b)(1). That definition provided that a "group health plan" is "any plan of, or contributed to by, an employer ... to provide health care ... to the employer's employees...." 26 U.S.C. § 5000(b)(1) (1992).

The Medicare Act authorized the Secretary of Health and Human Services to "prescribe such regulations as may be necessary to carry out the administration" of the Medicare program. 42 U.S.C. § 1395hh(a)(1) (1989). The Health Care Finance Administration ("HCFA"), which is part of the Department of Health and Human Services, is the agency charged with administering Medicare payments. *See New York Life Ins. Co.*, 41 Fed.Cl. at 61. Originally, HCFA's regulations provided no guidance for determining whether the working aged MSP provision applied to a particular class of individuals. Specifically, the regulations did not identify what relationships were covered by the terms "employer," "employee," and "employment." *See* 42 C.F.R. § 405.340–344 (1985); *New York Life Ins. Co.*, 41 Fed.Cl. at 61 n. 3. In 1989, however, HCFA published a final rule expressly defining the term "employed" for purposes of the working aged MSP provision. *See* 54 Fed.Reg. 41716, 41744 (October 11, 1989); 42 C.F.R. § 411.70(d) (1989); *New York Life Ins. Co.*, 41 Fed.Cl. at 61. The regulation pro-

vided that " 'Employed' encompasses not only employees but also ... self-employed persons." 42 C.F.R. § 411.70(d) (1989); see New York Life Ins. Co., 41 Fed.Cl. at 61.

In 1993, in the Omnibus Budget Reconciliation Act of 1993 ("OBRA 93"), Pub.L. No. 103–66, 107 Stat. 312, Congress made changes in the wording of the MSP statutory scheme. Specifically, it amended the definition of "group health plan" in 26 U.S.C. § 5000(b)(1) to include plans that "provide health care (directly or otherwise) to ... others associated or formerly associated with the employer in a business relationship, or their families." OBRA 93, § 13561(e)(2)(A)(ii), 107 Stat. 595. In addition, it added the following definition of "current employment status" to the working aged MSP provision: "An individual has 'current employment status' with an employer if the individual is an employee, is the employer, or is associated with the employer in a business relationship." OBRA 93, § 13561(e)(1)(H)(i), 107 Stat. 595, *codified* *at* 42 U.S.C. § 1395y(b)(1)(E)(ii) (1994). The statutory amendments became effective on August 10, 1993. OBRA 93, PL 103–66, 107 Stat 312.

## B. *The present dispute*

New York Life provides a group health plan for its qualifying insurance agents. Between December 21, 1990 and August 10, 1993, it maintained contractual relationships with both active and retired agents. See New York Life Ins. Co., 41 Fed.Cl. at 62. During that period, it paid health expenses before Medicare for active agents age 65 and over, so long as the agents qualified for coverage under the group health plan. From January of 1991 through June of 1992, it also paid health expenses before Medicare for retired agents age 65 and over who met the qualifications of the plan. Finally, beginning in July of 1992, it paid health expenses before Medicare for retired agents age 65 and over whenever younger agents with the same qualifications would be entitled to coverage. See id.

Eventually, New York Life sought reimbursement from HCFA for the health expense payments of its agents age 65 and over that it had made primary to Medicare between December 21, 1990 and August 10, 1993. In making this claim, it acknowledged that, by reason of the statutory amendments effected by OBRA 93, it was the primary payer for health care expenses of its agents age 65 and over after August 10, 1993. It argued, however, that the MSP statute did not apply to its group health plan prior to the enactment of OBRA 93. After HCFA denied the claim, New York Life filed suit in the Court of Federal Claims, seeking recovery under the Tucker Act, 28 U.S.C. 1491(a)(1994).

In due course, New York Life moved for summary judgment. In so doing, it argued that, although the medical and hospital expenses that it had paid had been covered by its group health plan, the primary payer should have been Medicare. It reasoned that its agents were independent contractors and that, during the relevant period, the working aged MSP provision applied only to common law employees. See New York Life Ins. Co., 41 Fed.Cl. at 62. Because the provision did not apply to its agents, New York Life argued, Medicare as primary payer should have reimbursed it for the payments it had made under its plan. See id.

For its part, the government moved to dismiss New York Life's complaint for failure to state a claim upon which relief could be granted. The government contended that the MSP working aged provisions were not limited to common law employees prior to OBRA 93, but covered independent contractors as well. According to the government, OBRA 93 did not expand the working aged provisions to include independent contractors. Rather, it simply

clarified the existing statute. Thus, New York Life was properly the primary payer on claims of its agents age 65 and older under its group health plan. *See id.* at 62–63.

In the Court of Federal Claims, both New York Life and the government asked the court to decide whether independent contractors were covered under the pre-OBRA 93 version of the MSP statute before deciding whether or not New York Life's agents were independent contractors, as asserted by New York Life. The parties adopted this stance because it was the government's position that the agents were covered by the statute in either event. Accordingly, in addressing the parties' motions, the Court of Federal Claims assumed that New York Life's agents were independent contractors. *See id.* at 60. The issue thus became whether, prior to OBRA 93, the working aged MSP provision applied to such "self-employed" independent contractors, as 42 C.F.R. § 411.70(d) (1989) provided and as argued by the government, or whether the provision applied only to common law employees, as argued by New York Life. *See New York Life Ins. Co.,* 41 Fed.Cl. at 60–61.

The Court of Federal Claims first addressed the question of whether HCFA's regulation, 42 C.F.R. § 411.70(d) (1989), was entitled to deference under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984). *See New York Life Ins. Co.,* 41 Fed.Cl. at 63. In *Chevron,* the Court stated:

> First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise

question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Chevron,* 467 U.S. at 842–43, 104 S.Ct. at 2781–82 (footnotes omitted).

Turning to the first step of the *Chevron* analysis, the court considered whether Congress had clearly explained the clause, "individual ... covered under the plan by reason of the current employment of the individual," which appeared in the MSP provision establishing Medicare as a secondary payer for working aged individuals. *See* 42 U.S.C. § 1395y(b)(1)(A)(i)(I) (Supp. IV 1992). *See also* Pub.L. No. 101–239, 103 Stat. 2106, 2229 (1989); *New York Life Ins. Co.,* 41 Fed.Cl. at 63. Concluding that Congress had neither spelled out the meaning of the language in the statute nor discussed it in the legislative history, the court took up New York Life's argument, based on *Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992), that Congress had implicitly, yet clearly, intended the provision to apply only to common law employees.

In *Darden,* which construed the Employee Retirement Income Security Act ("ERISA") of 1974, § 3(6), 88 Stat. 834, *codified at* 29 U.S.C. § 1002(6), the term "employee" was accorded a common law meaning. The Court of Federal Claims was not swayed by this argument, however, because the term "employee," which was at issue in *Darden,* is not found in the clause at issue in this case: "individual ... covered under the plan by reason of the current employment of the individual." 42 U.S.C. § 1395y(b)(1)(A)(i)(I) (Supp. IV 1992). *See New York Life Ins. Co.,* 41 Fed.Cl. at 64. The court also distin-

guished *Darden* by noting that, in that case, the Supreme Court had not had the benefit of an administrative regulation defining the disputed term. *See id.*

The court also rejected New York Life's reliance on the terms, "employer" and "employee," in the definition of "group health plan" contained in 26 U.S.C. § 5000(b)(1) (1992). *See New York Life Ins. Co.,* 41 Fed.Cl. at 64. In the court's view, the cited provision of the Internal Revenue Code only set forth hallmarks defining a group health plan and did not limit the language, "individual . . . covered under the plan by reason of the current employment of the individual," under the working aged MSP provision. *See id.*

Neither was the Court of Federal Claims persuaded by New York Life's argument that a Congressional intent to invoke common law employment concepts in the working aged MSP provision was demonstrated by contrasting the terms of that provision with the purportedly broader terms of the disability MSP provision. Congress enacted the disability provision in the Omnibus Budget Reconciliation Act of 1986, Pub.L. No. 99–509, § 9319, 100 Stat. 1874. The disability provision provided that "[a] large group health plan . . . may not take into account that an active individual . . . is entitled to benefits under [the Medicare program]." The term "active individual" specifically applied to "self-employed individual[s] . . . [and] individual[s] associated with the employer in a business relationship." *Id.; see also* 42 U.S.C. § 1395y(b)(1)(B)(iv)(I) (Supp. IV 1992); *New York Life Ins. Co.,* 41 Fed.Cl. at 61. Noting that the disabled MSP provision was separately enacted in a different year, *see* Omnibus Budget Reconciliation Act of 1986, Pub.L. No. 99–509, § 9319, 100 Stat. 1874, the court concluded that it provided little guidance about the working aged MSP provision, and consequently little support for New York Life's position. *See New York Life Ins. Co.,* 41 Fed.Cl. at 64–65.

Having disposed of New York Life's arguments that the intent of Congress in enacting the MSP statute was clear, the Court of Federal Claims proceeded to step two of the *Chevron* analysis: determining whether HCFA's interpretation of the statute, as embodied in its regulation, was reasonable. The court determined that it was. It did so because it found what it viewed as implicit Congressional approval of HCFA's regulation in the amendment of the working aged provision contained in OBRA 93. Inferring that Congress had viewed the broad definition of the statutory term "employment" in HCFA's regulation as one that had already applied to aged beneficiaries, the court interpreted the amendment as only a clarification of the existing working aged MSP provision. *See New York Life Ins. Co.,* 41 Fed.Cl. at 66. This, in turn, suggested to the court that the agency's broad interpretation had been reasonable. *See id.*

Accordingly, the court agreed with HCFA's interpretation that the working aged MSP provision had applied to independent contractors, making Medicare a secondary payer with respect to health care costs for New York Life's agents. Because it concluded that Medicare should not have been a primary payer of these costs, the court dismissed New York Life's complaint for failure to state a claim upon which relief could be granted. *See id.*

New York Life appeals. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

## DISCUSSION

The Court of Federal Claims may grant a motion to dismiss for failure to state a claim upon which relief may be granted where the plaintiff can prove no set of facts that would support its claim. *See New Valley Corp. v. United States,* 119 F.3d 1576, 1579–80 (Fed.Cir.1997). Whether the court properly dismissed for failure to state a claim is a question of law

which we review *de novo*. *See id.; Wheeler v. United States*, 11 F.3d 156, 158 (Fed. Cir.1993). We also review *de novo* the court's interpretation of the working aged provision of the MSP statute, for that too is a question of law over which our review is plenary. *See Ed A. Wilson, Inc. v. General Services Admin.*, 126 F.3d 1406, 1408 (Fed.Cir.1997).

## A. *Contentions of the parties*

New York Life contends that the Court of Federal Claims erred by proceeding to the second step of the *Chevron* analysis, i.e., deferentially inquiring into the reasonableness of HCFA's interpretation of the MSP statute. It maintains that this is a *Chevron* step-one case because the plain language of the statute speaks directly to the question at issue: namely whether, during the relevant period, the working aged MSP provision applied to independent contractors. According to New York Life, Congress demonstrated a clear intent to exclude independent contractors from the coverage of the statute by incorporating by reference the definition of "group health plan" from 26 U.S.C. § 5000(b)(1) (Supp. IV 1992). New York Life notes that section 5000(b)(1) defined a group health plan as one provided by an "employer" to an "employee," and it argues that such terms invoke only a common law employment relationship, while excluding an independent contractor relationship. According to New York Life, the language of 26 U.S.C. § 5000(b)(1) (Supp. IV 1992) thus informed the meaning of the words "by reason of the current employment of the individual or the individual's spouse" appearing in 42 U.S.C. § 1395y(b)(1)(A)(i) (Supp. IV 1992). In making this argument, New York Life sets forth, with emphasis added, a quotation of the MSP statute, altered to include in its text the definition of a "group health plan" found at 26 U.S.C. § 5000(b)(1) (Supp. IV 1992):

A group health plan [that is, "any plan of, or contributed to by, an *employer* (including a self-insured plan) to provide health care (directly or otherwise) to the *employer's employees*, former *employees*, or the families of such *employees* or former *employees*" (26 U.S.C. § 5000(b)(1) (Supp. IV 1992))]—

(I) may not take into account, for any item or service furnished to an individual 65 years of age or older at the time the individual is covered under the plan by reason of the current *employment* of the individual (or the individual's spouse), that the individual is entitled to benefits under section 226(a), and

(II) shall provide that any *employee* age 65 or older, and any *employee's* spouse age 65 or older, shall be entitled to the same benefits under the plan under the same conditions as any *employee*, and the spouse of such *employee*, under age 65.

(Brief of Appellant at 14.)

As it did in the Court of Federal Claims, New York Life relies upon *Nationwide Mut. Ins. Co. v. Darden* for the proposition that when a statute uses the terms "employer" and "employee," a court must infer that the statute contemplates a common law employer-employee relationship absent a clearly expressed contrary intent of Congress. New York Life also contrasts the disability MSP provision as one of decidedly broader applicability, in referring to a "self-employed individual ... [and] an individual associated with the employer in a business relationship." 42 U.S.C. § 1395y(b)(1)(B)(iv)(I) (Supp. IV 1992).

New York Life argues that the enactment of OBRA 93 for the first time expanded the applicability of the working aged MSP provision to independent contractors by expressly including those "associated with the employer in a business relationship." 42 U.S.C.

§ 1395y(b)(1)(E)(ii) (1994). According to New York Life, the addition of this phrase would have meaning only if viewed as a substantive change from the previous working aged MSP provision.

For its part, the government responds that there was a statutory ambiguity about whether Congress intended the pre-OBRA 93 working aged MSP provision to cover independent contractors. According to the government, the ambiguity stemmed from Congress' choice of the term "individual" rather than the term "employee" in the working aged MSP provision:

> A group health plan may not take into account, for any item or service furnished to an *individual* 65 years of age or older at the time the *individual* is covered under the plan by reason of *the current employment of the individual* (or the individual's spouse), that the individual is entitled to [Medicare] benefits ...

(Brief of Appellee at 17 (quoting Pub.L. No. 101–239, 103 Stat. 2106, 2229 (1989)).) The government argues that, in view of the use of the term "individual," the term "employment" could be interpreted to include the self-employed. Such ambiguity, the government maintains, requires us to defer under *Chevron* to HCFA's reasonable interpretation of the statute in 42 C.F.R. § 411.70(d) (1989).

The government notes that HCFA's regulatory interpretation was in place when the Omnibus Budget Reconciliation Act of 1989 ("OBRA 89"), Pub.L. No. 101–239, 103 Stat. 2106, 2229, was considered; yet Congress made only minor changes to the working aged MSP provision. The government characterizes this as a legislative reenactment without disapproval of HCFA's interpretation.

The government disputes New York Life's position that the broad language of OBRA 93 shows that Congress knew how to include the self-employed within the scope of the working aged MSP provision when it so desired. The answer to that argument, the government maintains, is that the enactment of other provisions expressly using the term "employee" demonstrates conversely that Congress knew how to indicate common law principles when it so desired. The government further argues that the legislative history of OBRA 93 suggests no intent to change the working aged provision; rather, it indicates a desire only to "clarify[ ] the definition of active employee for disabled beneficiaries to conform with the definition for working aged beneficiaries." H.R. Conf. Rep. No. 213, at 803, reprinted in 1993 U.S.C.C.A.N. 1492.

The government characterizes New York Life's reliance upon *Darden* as misplaced. It points out that in *Darden,* the Supreme Court interpreted an express use of the term "employee," rather than the term "employment" (as in the clause, "by reason of the current employment of the individual"). Moreover, the government asserts, courts must be cautious not to accord the *Darden* rule of construction such expansive treatment as to abdicate judicial responsibility for construing statutes that employ variants. The government insists that because *Darden* did not construe any term found in the language, "individual ... covered under the plan by reason of the current employment of the individual," the case does not support the proposition urged by New York Life: that a common law relationship is to be inferred in the working aged MSP provision.

**B. *Analysis***

 We agree with New York Life that, in the pre-OBRA 93 version of the MSP statute, Congress made clear its intent to limit the working aged MSP provision to common law employees. Thus, because "Congress has directly spoken to the precise question at issue," *Chevron,* 467 U.S. at 842–43, 104 S.Ct. at 2781–82, this is a

*Chevron* step-one case. We therefore do not have a case in which "Congress has not directly addressed the precise question at issue." *Id.* Accordingly, we do not proceed to a *Chevron* step-two analysis, which in this case would be determining whether HCFA's regulation interpreting the MSP's working aged provision as applicable to independent contractors, *see* 42 C.F.R. § 411.70(d), was "based on a permissible construction of the [MSP] statute." *Chevron,* 467 U.S. at 842–43, 104 S.Ct. at 2781–82.

## I

The starting point for our analysis is the language of the statute. *See Highland Falls–Fort Montgomery Cent. Sch. Dist. v. United States,* 48 F.3d 1166, 1170–71 (Fed. Cir.1995) (undertaking step-one of the *Chevron* analysis by considering first and foremost the language of the statute involved). As noted above, the working aged provision of the MSP statute provides that, in determining whether it must pay primary to Medicare, a "group health plan," as defined in 26 U.S.C. § 5000(b)(1) (Supp. IV 1992), "may not take into account, for any item or service furnished to an individual 65 years of age or older at the time the individual is covered under the plan by reason of the current employment of the individual (or the individual's spouse), that the individual is entitled to benefits under section 226(a)...." 42 U.S.C. § 1395y(b)(1)(A)(i) (Supp. IV 1992). As also noted above, "group health plan" is defined in 26 U.S.C. § 5000(b)(1) (Supp. IV 1992) as "any plan of, or contributed to by, an employer ... to provide health care ... to the employer's employees, former employees, or the families of such employees or former employees."

The MSP statute is clearly worded and very understandable. However, nowhere does it explain the meaning of the language that is at the heart of the dispute in this case: "individual ... covered under the plan by reason of the current employment of the individual (or the individual's spouse)." Thus, the question squarely presented is whether this lack of an explanation means that "Congress has not directly addressed the precise question at issue," thereby making this, as the government argues, a *Chevron* step-two case, in which we must determine whether HCFA's regulation "is based upon a permissible construction of the statute" and then defer to it if it is. We do not believe that it does.

We believe that *Nationwide Mut. Ins. Co. v. Darden* is controlling authority. In *Darden,* the Supreme Court had to determine whether an independent contractor (an insurance agent) had a right of action under ERISA, which allows a "participant" to enforce its substantive provisions. 503 U.S. at 320–21, 112 S.Ct. at 1347. The Court observed that ERISA defines "participant" as "any employee or former employee of an employer ... who is or may become eligible to receive a benefit of any type from an employee benefit plan...." *Id.* (quoting 29 U.S.C. § 1002(7)). The Court further observed that ERISA defines "employee" as "any individual employed by an employer." *See id.* (quoting 29 U.S.C. § 1002(6)). The Court pointed out, "We have often been asked to construe the meaning of 'employee' where the statute containing the term does not helpfully define it." *Id.,* 503 U.S. at 322, 112 S.Ct. at 1348. Noting that it had "[m]ost recently confronted this problem" in *Community for Creative Non–Violence v. Reid,* 490 U.S. 730, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989), the Court stated that, in *Reid,* it had "unanimously applied the 'well established' principle" that

"[w]here Congress uses terms that have accumulated settled meaning under ... the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the

established meaning of these terms." ... In the past, when Congress has used the term "employee" without defining it, we have concluded that Congress intended to describe the conventional master-servant relationship as understood by common-law agency doctrine.

503 U.S. at 322–23, 112 S.Ct. at 1348 (citations omitted) (quoting *Community for Creative Non–Violence v. Reid,* 490 U.S. at 739–40, 109 S.Ct. at 2172–73). The Court therefore concluded that ERISA afforded a right of action only to a common-law employee, as defined in *Reid,* 490 U.S. at 740, 109 S.Ct. at 2173 (defining common law employee as a hired party over whom the hiring party has the right to control the manner and means by which the work is accomplished).

Earlier this year, in *Neder v. United States,* —— U.S. ——, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999), the Supreme Court reaffirmed the principle of statutory interpretation set forth in *Darden.* The Court granted certiorari in *Neder* to decide, among other things, whether materiality is an element of a "scheme or artifice to defraud" under the federal mail fraud, wire fraud, and bank fraud statutes. *See id.* at ——, 119 S.Ct. at 1839. Noting that none of the statutes at issue define the phrase "scheme or artifice to defraud," the Court cited *Darden* and looked to the rule of statutory construction that it articulated in the statement quoted above from that case. Applying "the rule that Congress intends to incorporate the well-settled meaning of the common law terms it uses," the Court stated that it could not "infer from the absence of an express reference to materiality that Congress intended to drop that element from the fraud statutes." *Id.* at ——, 119 S.Ct. at 1840. "On the contrary," the Court stated, "we must presume that Congress intended to incorporate materiality 'unless the statute indicates otherwise.'" *Id.*

Recently, in *NSK Ltd. v. United States,* 115 F.3d 965 (Fed.Cir.1997), we relied upon the rule of statutory interpretation followed in *Darden* and *Neder.* One of the issues in *NSK* revolved around the meaning of the word "sold" appearing in the antidumping statutes. *See* 19 U.S.C. § 1673 (1988) (providing that antidumping duties are assessed when "foreign merchandise is being, or is likely to be, sold in the United States at less than its fair value" to the detriment of a domestic industry); *id.* (stating that the antidumping duty equals the amount by which foreign market value exceeds the United States price for merchandise); 19 U.S.C § 1677a(c)(1988) (defining "exporter's sales price"—which may be the measure of United States price—as the "price at which merchandise is sold or agreed to be sold in the United States"). The government argued that, in determining the meaning of "sold" and the related word "sale," we should defer, under a *Chevron* step-two analysis, to a specified "long-standing policy" on the part of Customs. 115 F.3d at 973–74.

We rejected the approach urged by the government. We acknowledged that the government was correct that "there was no explicitly stated definition of the term 'sale' or 'sold' in the relevant statutory provisions or legislative history." *Id.* at 974. We stated, however, that we believed that "Congress intended to give the term its ordinary meaning, thereby making any explicit definition unnecessary." *Id.* In arriving at that conclusion, we noted that "[a]s stated by the Supreme Court, '[w]here Congress uses terms that have acquired settled meaning under ... the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms.'" *Id.,* (quoting *NLRB v. Amax Coal Co.,* 453 U.S. 322, 329, 101 S.Ct. 2789, 2794, 69 L.Ed.2d 672(1981)). Thus, we declined to reach what we described as "the second prong of the *Chevron* analysis." *Id.* at 975. Ac-

cordingly, we determined that the term "sold," as used in 19 U.S.C. §§ 1673 and 1677a(c), was to be accorded its ordinary meaning (requiring both a transfer of ownership to an unrelated party and consideration), rather than the meaning suggested for it by Customs' "long-standing policy." *Id.*

■ *Darden* teaches that where Congress does not define the term "employee" in a statute, the term has its common law meaning. As seen above, under the common law, "employee" does not include an independent contractor. Thus, the term "employee" appearing in the definition of "group health plan" in 26 U.S.C. § 5000(b)(1) (1992) must be read as not including an independent contractor.

■ A statute is to be read in its entirety, *see Ratzlaf v. United States*, 510 U.S. 135, 140, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994); *Vectra Fitness, Inc. v. TNWK Corp.*, 162 F.3d 1379, 1384–85 (Fed.Cir. 1998), in a logical and common sense manner, *see Witco Chem. Corp. v. United States*, 742 F.2d 615, 619 (Fed.Cir.1984) ("an absurd construction of a statutory provision should be avoided"); *Best Power Technology Sales Corp. v. Austin*, 984 F.2d 1172, 1175–76 (Fed.Cir.1993) (same) (quoting *Haggar Co. v. Helvering*, 308 U.S. 389, 394, 60 S.Ct. 337, 339–40, 84 L.Ed. 340 (1940)), so as to give effect to all of its parts, *Saunders v. Secretary of the Dep't of Health & Human Servs.*, 25 F.3d 1031, 1035 (Fed.Cir.1994) ("it is a settled rule of statutory interpretation that a statute is to be construed in a way which gives meaning and effect to all of its parts"). It is true that, in *Darden*, the Court construed the term "employee" rather than the term "employment," found in the clause, "individual . . . covered under the plan by reason of the current employment of the individual," 42 U.S.C. § 1395y(b)(1)(A)(i)(I) (Supp. IV 1992). However, the term "employee," construed by the Court in *Dar-*

*den*, was found in 26 U.S.C. § 5000(b)(1) (1992). As indicated by New York Life's altered version of the working aged provision of the MSP statute, the term "employee" was an integral part of the statutory scheme prior to OBRA 93. It therefore provided context to the working aged MSP provision; it thus must inform our understanding of the term "employment." We therefore must reject the government's argument that *Darden* is not controlling because in that case the Court did not construe any term found in the statute at issue here. *Darden* states a rule of statutory construction that squarely applies to this case.

The disability MSP provision and corresponding Internal Revenue Code definition effective during the relevant time period lends further support to our conclusion. The disability MSP provision specifically applied to "an employee, . . . the employer, self-employed individual, [and] an individual associated with the employer in a business relationship." 42 U.S.C. § 1395y(b)(1)(B)(iv)(I) (Supp. IV 1992). That provision incorporated by reference the Internal Revenue Code definition of a "large group health plan," as one provided by an employer to "employees . . . [and] others associated . . . with the employer in a business relationship." 26 U.S.C. § 5000(b)(2) (1992). The clear applicability of these disability-related provisions to independent contractors demonstrated that Congress knew how to include independent contractors when it so desired. *See B.F. Goodrich Co. v. United States*, 94 F.3d 1545, 1550 (Fed.Cir.1996) (where the meaning of a tax provision was at issue and a different tax provision set forth a clear standard, the court noted that the latter provision demonstrated that "Congress knows how to adopt such a standard when it so desires.")

## II

As noted above, the government argues that, in view of the use of the word "indi-

vidual" in the working aged MSP provision, the term "employment" could be interpreted to include the self-employed. In our view, however, the use of the word "individual" in the statute is of no particular significance. Rather, to us it simply reflects Congress's choice of the way in which to refer to a person age 65 or older who is covered by the statute.

Neither do we find persuasive the government's argument, noted above, that Congress implicitly ratified HCFA's interpretation of the working aged provision of the MSP statute when, in OBRA 89, it had that interpretation before it yet made only minor changes in the wording of the statute. The government has identified nothing in the legislative history of OBRA 89 indicating any consideration of HCFA's regulation, which was only made final on October 11, 1989, see 54 Fed.Reg. 41716 (Oct. 11, 1989), little more than two months before OBRA 89 was passed on December 19, 1989, see Pub.L. No. 101–239, 103 Stat 2106. We believe the government attaches undue significance to the silence of Congress in the 1989 statute.

Finally, contrary to the government's argument and the holding of the Court of Federal Claims, we conclude that OBRA 93 represented an expansion, not a clarification, of the working aged MSP provision. Specifically, OBRA 93 expanded the applicability of the provision from an "individual . . . covered under the plan by reason of the current employment of the individual," 42 U.S.C. § 1395y(b)(1)(A)(i)(I) (Supp. IV 1992), to include an "individual . . . who is covered under the plan by virtue of the individual's current employment status." 42 U.S.C. § 1395y(b)(1)(A)(i) (1994). As a result of OBRA 93, the working aged MSP provision now provides that an individual has "current employment status . . . if the individual is an employee . . . or is associated with the employer in a business relationship." *Id.*

We do not agree with the Court of Federal Claims' analysis of the legislative his-

tory of OBRA 93. In its analysis, the court cited a passage from the House Conference Report accompanying OBRA 93, *New York Life Ins. Co.*, 41 Fed.Cl. at 66 (citing H.R. Conf. Rep. No. 213, at 805, reprinted in 1993 U.S.C.C.A.N. 1492, 1494). In that passage, it is stated: "The provision for the disabled would be modified to tie directly to employment status consistent with the provision that applies to aged beneficiaries." H.R. Conf. Rep. No. 213, at 805, reprinted in 1993 U.S.C.C.A.N. 1492, 1494. This is not the type of legislative history that clearly indicates that no substantive change in the working aged MSP provision was intended. *Compare Wilson v. United States*, 917 F.2d 529, 535 (Fed.Cir.1990) ("The House report accompanying the 1962 codification made clear that no substantive change was intended. The sponsors of the 1987 clarification described the added language as necessary to restore the original intent to the language of the section.")

In sum, we conclude that the language, "individual . . . covered under the plan by reason of the current employment of the individual," appearing in the MSP statute that was in effect between December 21, 1990 and August 10, 1993 may not be read to cover the situation in which an individual worked as an independent contractor.

## CONCLUSION

Based upon the foregoing, we hold that the working aged MSP provision effective between December 21, 1990 and August 10, 1993 did not apply to independent contractors in a group health plan. The decision of the Court of Federal Claims to the contrary is reversed. Accordingly, the judgment in favor of the United States is vacated. The case is remanded to the Court of Federal Claims (i) for a determination of whether New York Life's agents were common law employees or whether they were independent contractors, and (ii)

for entry of an appropriate judgment based upon that determination.

Each party shall bear its own costs.

*VACATED* and *REMANDED*